**UNITED STATES of America, Appellee,**

**v.**

**Barney CANADA, a/k/a Byron Levon Canada, Defendant, Appellant.**

**No. 91–1691.**

United States Court of Appeals, First Circuit.

Argued Jan. 7, 1992.

Decided April 2, 1992.

---

Richard J. Shea, Boston, Mass., by appointment of the Court, for defendant, appellant.

Wayne A. Budd, U.S. Atty., with whom Lon F. Povich, Asst. U.S. Atty., Boston, Mass., was on brief for U.S.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Defendant, Barney Canada, a/k/a Byron Levon Canada, appeals from his sentence following a guilty plea. A principal issue is whether remarks made by the Assistant United States Attorney during sentencing amounted to a repudiation of the plea bargain.

Canada was charged with operating an "advance fee scheme" in which he and several coconspirators would induce unsuspecting individuals to pay advance fees—to be held in escrow—in exchange for the

promise to arrange financing for projects on which these individuals sought to embark. In the end Canada and his coconspirators would keep the fees without producing the promised financing. A grand jury indicted Canada on 26 counts charging him with conspiracy, in violation of 18 U.S.C. § 371; mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; inducing interstate transportation for fraud, in violation of 18 U.S.C. § 2314; aiding and abetting, in violation of 18 U.S.C. § 2; and bankruptcy fraud, in violation of 18 U.S.C. § 152. Canada pleaded guilty to all 26 counts pursuant to a negotiated plea agreement with the government, memorialized in a four-page letter which we attach as an appendix.

The plea agreement provided essentially as follows. In exchange for Canada's guilty plea and cooperation, the government would forego prosecution of Canada for certain conduct known to the government after the indictment. The government would recommend that the district court impose a sentence of 36 months incarceration. And the government would inform the Probation Department and the court of "this agreement ... [and] the full nature and extent" of Canada's cooperation. The agreement was expressly premised on certain described calculations under the guidelines, including an assumed criminal history category of II, and a two-level reduction in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a guideline range of 30–37 months. These calculations nowhere included any enhancement under U.S.S.G. § 3B1.1 of Canada's offense level for the role of manager or supervisor in the criminal activity.

After a hearing, Canada was sentenced in the United States District Court for the District of Massachusetts to a term of imprisonment of 48 months—a sentence one year longer than the government's recommended 36 months. The court selected this term from a guideline range of 46 to 57 months. In calculating this range, the court found that Canada fell within criminal history category III; granted a two-point reduction for the acceptance of responsibility under U.S.S.G. § 3E1.1; and imposed a three-point enhancement for Canada's supervisory role in the offense under U.S.S.G. § 3B1.1. The court also ordered Canada to make restitution in the amount of $1.8 million.

Canada contends his sentence was infected by two errors. First, he contends that the court's imposition of a three-level enhancement for his alleged supervisory role in the offense was improper. Second, Canada argues that the government breached its plea agreement with him by urging the court to impose a higher sentence than that upon which it had agreed, and by failing to inform the court of the full extent of Canada's cooperation with the government as promised in the plea agreement. We reject Canada's first argument, but agree that the government did not live up to the terms of its plea agreement. Accordingly, we vacate Canada's sentence and remand for resentencing before a different judge.

## I.

■ At the sentencing hearing, the district court stated,

> the record is clear, that at least as among the defendants in the case, Mr. Canada was at least a manager or supervisor for part of the time of this exercise. The record is also clear that the criminal activity was extensive.... I think it is entirely appropriate to add three levels under 3B1.1(b).[1]

Canada does not challenge the court's above determination on its merits. Rather, Canada complains, (1) that he was not given proper advance notice that his manage-

---

1. Section 3B1.1 instructs the sentencing court, [b]ased on the defendant's role in the offense, [to] increase the offense level as follows:

. . . . .

  (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

U.S.S.G. § 3B1.1(b).

rial or supervisory role in the offense would be an issue at the sentencing hearing; and (2) that he was not given advance notice that the court would rely on testimony and evidence adduced at proceedings against his codefendants in assessing his role in the offense. We find no merit in these contentions.

In contending he had no notice that his role in the offense would be an issue at the sentencing hearing, Canada points out that the presentence report did not assess his leadership or supervision of his codefendants. Rather, the report stated that "[i]nformation as to the defendant's specific role in the offense was requested but never received and thus there is no basis on which to base any adjustment." Canada also notes—and the government appears to concede [2]—that during plea negotiations, the government indicated that it would not seek enhancement based on Canada's role in the offense. Consequently, he argues, he was taken by surprise when the judge raised the issue at his sentencing hearing. Canada asserts that under the Supreme Court's recent decision in *Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), it was incumbent upon the court to notify him in advance that it planned to consider any upward adjustment not recommended in the presentence report. We disagree.

In *Burns,* the Supreme Court held that "before a district court can *depart upward* on a ground not identified as a ground for upward departure either in the presentence report or in a presentencing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns,* 111 S.Ct. at 2187 (emphasis supplied).[3] *Burns,* however, dealt with a court's *sua sponte* decision to *depart* upward from the guidelines. Citing Rule 32's mandate that the parties be given "an opportunity to comment upon the probation

officer's determination and on other matters relating to the appropriate sentence," and noting that "whether a *sua sponte* departure from the Guidelines would be legally and factually warranted is a 'matte[r] relating to the appropriate sentence,'" the Court reasoned that "it makes no sense to impute to Congress an intent that a defendant have the right to *comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling." *Id.* at 2186 (emphasis in original).

We do not read *Burns* to require special notice where, as here, a court decides that an upward *adjustment* is warranted based on offense or offender characteristics delineated within the Sentencing Guidelines themselves, at least where the facts relevant to the adjustment are already known to defendant. The *Burns* court was concerned about a sentencing court's *sua sponte* departure from the Sentencing Guidelines "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure." *Id.* at 2186 (citing Guidelines Ch. 1, Part A, Introduction 4(b)). Because "no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way," the Court concluded that "the textual and contextual evidence of legislative intent indicates that Congress did not intend district courts to depart from the Guidelines *sua sponte* without first affording notice to the parties." *Id.* at 2186.

In contrast, the Sentencing Guidelines define specific and finite factors warranting the application of an upward or downward adjustment to a defendant's otherwise applicable sentencing range. Unlike a *sua sponte* departure, an adjustment does not require the parties to try "to anticipate

---

**2.** *See infra* note 5.

**3.** Rule 32 of the Federal Rules of Criminal Procedure requires that the parties receive "notice of the probation officer's determination" at least 10 days before the court imposes sentence. Fed.R.Crim.P. 32(a)(1) & (c)(3). The Rule man-

dates further that "[a]t the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment on the probation officer's report and on other matters relating to the appropriate sentence." Fed.R.Crim.P. 32(a)(1).

and negate every conceivable ground on which the district court might choose to depart on its own initiative." *Id.* at 2187. Consequently, where as here a sentencing court raises for the first time at hearing the making of an upward adjustment on a ground set out in the guidelines, Rule 32's mandate that the court afford defendant "an opportunity to comment upon ... matters relating to the appropriate sentence" is not necessarily meaningless, as the guidelines themselves provide notice to the defendant of the issues about which he may be called upon to comment.[4] Fed. R.Crim.P. 32(a)(1); *see United States v. McLean,* 951 F.2d 1300, 1302 (D.C.Cir.1991) (holding that *Burns* does not require district courts to give advance notice of their intention to deny a downward adjustment for acceptance of responsibility recommended in a presentence report); *United States v. Palmer,* 946 F.2d 97, 100 (9th Cir.1991) (same—without citing *Burns* ).

■ Canada challenges the district court's upward adjustment of his sentence on a second ground. According to Canada, the district court's determination that he played a supervisory role in the offense was based on testimony and evidence adduced at the proceedings against his codefendants. Because the district court did not give him notice that it would rely on factual information from these other proceedings, Canada contends that this court's decision in *United States v. Berzon,* 941 F.2d 8 (1st Cir.1991), requires that we vacate his sentence and remand for resentencing.

In *Berzon* this court held "that a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based." *Berzon,* 941 F.2d at 10. Berzon contended that the district court had based its upward adjustment of his sentence on information the judge had obtained at codefendant proceedings not attended by Berzon and his counsel. We remanded and ordered resentencing if it were found that the original sentence was based on information obtained at these other proceedings.

Canada argues that *Berzon* controls here for two reasons. First, as in *Berzon,* the information on which the sentencing judge relied to determine that Canada played a supervisory role in the offense was not in the presentence report nor otherwise in the record in Canada's case. *Berzon,* 941 F.2d at 19–20. Second, Canada was given no notice that evidence from outside the record of this case would be considered, nor was he given any indication of the identity of evidence being considered. While the above may be true, Canada's reliance on *Berzon* is misplaced.

Our concern in *Berzon* was that "notwithstanding the wide scope of the sentencing court's discretion, a defendant may not be placed in a position where, *because of his ignorance of the information being used against him,* he is effectively denied an opportunity to comment on or otherwise challenge material information considered by the district court." *Id.* at 21 (emphasis supplied). Because of Berzon's attorney's illness, Berzon had not been present at the codefendant hearings at which the challenged information was provided, hence he was unprepared to comment upon that information at his own hearing. Here, however, Canada was not ignorant of the information upon which the court relied in sentencing him, hence he was not denied a

---

4. The facts of this case suggest that Canada had plenty of notice—in addition to that provided by the guidelines themselves—that his role in the offense could be an issue at his sentencing hearing.

First, his role in the offense had been an issue during plea negotiations. While the government agreed not to press the issue before the judge, the plea agreement stated clearly that "[i]t is understood that this agreement does not and cannot bind the sentencing judge." Thus, Canada should have understood that the judge was free to pursue the issue of his role in the offense despite the government's position on the matter.

Second, the presentence report did not purport to rule out later consideration of Canada's role in the offense. Rather, it simply stated that "[i]nformation as to the defendant's specific role in the offense was requested but was never received and thus there is no basis on which to base any adjustment." This left the door ajar for provision of the relevant information, and should have alerted Canada that his role in the offense was still an open question.

meaningful opportunity to comment. To the extent that information was derived from a codefendant's trial, it came from testimony Canada himself had provided there before the same judge. Canada, indeed, included excerpts from his testimony at the codefendant's trial in a memorandum he submitted to the judge prior to his sentencing hearing.

In *Berzon*, we emphasized that the district court was fully entitled "to hear the testimony [at Berzon's codefendant's sentencing] and thereafter consider it when sentencing Berzon." *Id.* at 21. The problem was merely Berzon's absence from that proceeding and the fact that he had not been alerted to the possible use of the information so as to enable him to obtain a transcript, or speak to someone who had been present. Here, having himself provided the testimony in question at the other proceeding, Canada cannot now complain that he was surprised.

In the circumstances, we find no error in the court's determination of a three-level enhancement of Canada's sentence pursuant to U.S.S.G. § 3B1.1(b).

## II.

█ Canada's more troublesome argument is that the Assistant United States Attorney who appeared for the government at the sentencing hearing violated the terms of the plea agreement in two respects: first, she affirmatively supported a higher sentence than that upon which the parties had agreed; and second, she failed to apprise the court of Canada's cooperation. Because we find that the government did not properly fulfill its promises in the plea agreement, we vacate his sentence and remand for resentencing.

Canada's plea agreement with the government, *see* Appendix, provided *inter alia* that, in exchange for his guilty plea and full cooperation,

> the government agrees to *recommend that the Court impose a sentence of thirty-six (36) months incarceration.*

> . . . . .

> It is understood that this agreement does not and cannot bind the sentencing judge. This office will, however, *inform* the Probation Department and *the Court* of: (1) this agreement; (2) *the full nature and extent of Mr. Canada's cooperation;* and (3) any other information relevant to the sentence. (Emphasis supplied).

The 36 month sentence the government promised to recommend was premised on specific calculations set out in the agreement which conspicuously omitted any Section 3B1.1 enhancement for Canada's managerial or supervisory role.[5]

The Assistant United States Attorney's conduct at the sentencing hearing did not fulfill and significantly undercut the government's promises. While the Assistant United States Attorney informed the court of the agreement and noted the existence therein of the government's promise to recommend only 36 months of incarceration, she never herself affirmatively recommended a 36 month sentence and her comments seemed to undercut such a recommendation. Sometime after the sentencing judge had indicated that the government's recommendation was below the proper guideline range,[6] the Assistant United States Attorney, in what contextually appeared as agreement with the judge, stated:

---

**5.** At the sentencing hearing, in response to the judge's inquiry about Canada's leadership role in the offense, the Assistant United States Attorney explained as follows:

> Your Honor, the negotiations that led to the plea agreement here were substantial, protracted, and this was a matter which was discussed at that time. The government will stand by the plea agreement, which it entered into with the defendant. There was no request made in the plea agreement, specifically in terms of our discussion.

**6.** Before the prosecutor commented about Canada's sentence, the sentencing judge remarked, "I understand also that while the government is in a peculiar position, having agreed to make a particular recommendation which is now outside the guidelines, as I calculate them, the plea agreement does say that I have the ultimate decision as to both guideline computation and sentence." At this point, the sentencing judge had made a preliminary determination that the appropriate sentencing range was 46 to 57 months.

[y]our Honor, the plea agreement, as the Court is well aware, indicates that the government *would* recommend a period of incarceration of 36 months, which under the calculations, that *at that time under the information that was known to the government,* and the interpretation of the guidelines, that the defendant and the government entered into, *was the upper end of the guideline range.* That is in the plea agreement.

*The government feels a substantial period of incarceration in this case, for the reasons that the Court has already indicated:* this is a massive fraud perpetrated on a large number of individuals over a long period of time, perpetuated not only in this country, but, as the Court mentioned, in the Caribbean.

\*    \*    \*    \*    \*    \*

*It is important, the government feels, that a very strong message be sent by the Court.* This is one of the largest, if not the largest advance fee scheme, which the Office of the United States Attorney has been involved in the last several years.

In addition to a lengthy period of incarceration, the government also requests, your Honor, that there be an order of full restitution. (Emphasis supplied).

After making a few more comments about restitution, the Assistant United States Attorney remarked, "I begged the question as to the specific amount of the period of incarceration here—", at which point the sentencing judge cut her off stating, "I think you are stuck with the plea agreement." The Assistant United States Attorney responded, "I believe I am, your Honor."

■ Whether the government breached its plea agreement with Canada is a question of law and our review is plenary. *United States v. Moscahlaidis,* 868 F.2d 1357, 1360 (3d Cir.1989); *United States v. Voccola,* 600 F.Supp. 1534, 1537 (D.R.I. 1985). In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement of the

prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.; United States v. Kurkculer,* 918 F.2d 295, 297 (1st Cir.1990) ("The Supreme Court's *Santobello* decision and our own decisions require more than good faith by the government in securing through plea bargaining a defendant's waiver of constitutional rights. The government must keep its promises or the defendant must be released from the bargain.") (footnote omitted). Here, as Canada apparently fulfilled his end of the bargain, the government was required to do the same.

■ At the sentencing hearing the Assistant United States Attorney paid "lip service" to the negotiated agreement with its recommendation of a 36 month incarceration. Nevertheless, she herself failed affirmatively to recommend 36 months, as promised, and she went on to emphasize Canada's supervisory role in the offense and then to urge the judge to impose "a lengthy period of incarceration" and to send "a very strong message." Her references to the agreement were grudging and apologetic. Moreover, in context, her urging of "a lengthy period of incarceration" sounded like encouragement for a sentence greater than 36 months. While it can be argued that the government stopped short of explicitly repudiating the agreement, *Santobello* prohibits not only "explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *Voccola,* 600 F.Supp. at 1537 (quoted with approval in *United States v. Hogan,* 862 F.2d 386, 388 (1st Cir.1988)); *see also Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973) ("the most meticulous standards of both promise and performance must be met by prosecutors in plea bargaining"). This is not to suggest that prosecutors need adhere to any particular form of words in "recommending" an agreed sentence, but their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse. *See United States v. Brown,* 500 F.2d 375, 377 (4th Cir.1974) ("it is manifest that the

consideration which induced defendant's guilty plea was not simply the prospect of formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a *recommendation* on sentencing.") (emphasis added). While a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, *United States v. Benchimol*, 471 U.S. 453, 455–56, 105 S.Ct. 2103, 2104–05, 85 L.Ed.2d 462 (1985); *United States v. Ramos*, 810 F.2d 308, 313–14 (1st Cir.1987), it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself. *See Benchimol* 471 U.S. at 456, 105 S.Ct. at 2104. In brief, the Assistant United States Attorney was not at liberty to cut off the government's agreement at the knees.

Had the Assistant United States Attorney stated affirmatively those things the government had promised to present in the plea agreement, namely its recommendation of a 36 month sentence and a fair recitation of what Canada had done to cooperate, and had it refrained from conspicuously undermining its agreed position, we would have accepted this, without more, as constituting minimal fulfillment of its obligations.[7] Here, however, the Assistant United States Attorney "immediately took away with the left hand what [she] had given with the right," *Voccola*, 600 F.Supp. at 1537 (citing *Brown*, 500 F.2d 375 (4th Cir.1974)), by urging the court to impose a lengthy sentence within a context suggesting that she had in mind something greater than the agreed 36 months. To be sure, the judge was intimately familiar with the

case, and it may seem unlikely that the sentence would have come out any differently whatever the Assistant United States Attorney did or did not do. Nonetheless, the government owes a duty to adhere to the bargain it has made. *Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 498–99. As we said in *Correale*,

> it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective.

*Correale*, 479 F.2d at 949.

The Assistant United States Attorney's enthusiasm for a higher sentence was made more serious by her failure ever to delineate the nature and extent of Canada's cooperation with the government. Under the plea agreement, the government promised to inform the "Probation Department and the Court of . . . (2) the *full nature and extent* of Mr. Canada's cooperation." (Emphasis supplied). His cooperation was a principal justification for the recommended low sentence. The government contends that Canada received the benefit of this promise because the plea agreement—a copy of which the government submitted to the district court—made clear that Canada promised to cooperate with the government in specified ways, and that the government expected the court to consider the cooperation during sentencing. Having presided over the proceeding in which Canada testified for the government, the court could presumably judge for itself how res-

---

7. We refrain from basing our finding of error on the Assistant United States Attorney's other colloquies with the court (not quoted herein) tending to support the court's earlier-stated view that a three-level upward adjustment was necessitated by Canada's role as a manager or supervisor. It is necessary at all times that the government "level" with the court as to the correct facts and calculations relevant to guideline sentencing. We would hesitate to send a message otherwise, even though some of these remarks undercut the agreed 36 month sentence (*e.g.*, "I think the facts strongly suggest that aggravated the role played by defendant" and "I

think that the facts certainly suggest that possibility of the upward adjustment"). Arguably, these comments were gratuitous, as the court already had all the necessary information and did not request confirmation from the Assistant United States Attorney. Thus, it can be plausibly contended that the Assistant United States Attorney's eagerness to volunteer such comments was another example of her desire to undermine the agreement. Nonetheless, we do not rely on this aspect of the government's conduct given the public's paramount interest in candid and truthful testimony by prosecutors.

ponsibly Canada had adhered to his promises to cooperate. Canada's own counsel, moreover, reiterated the details of Canada's cooperation and the sentencing court expressly mentioned Canada's cooperation when sentencing him.

Given the above, had the Assistant United States Attorney abided by the plea agreement in other respects, her failure to embellish upon Canada's cooperative efforts might be overlooked as merely meant to avoid repeating the obvious.[8] In the circumstances, however, the Assistant United States Attorney's silence about Canada's cooperation, like her failure ever positively to urge the 36 month sentence, has a more ominous ring. It becomes another factor which, when added with those discussed above, suggests an implied repudiation of the government's bargain. Canada was entitled to have the court reminded of his cooperation as justification for the moderate sentence the government had agreed to recommend. Instead, the government's efforts seemed directed at encouraging a higher sentence than the one to which it had agreed.

### III.

■ We conclude that the government's conduct amounted to non-performance of its plea agreement with Canada. Whether or not the sentencing judge was actually influenced by the Assistant United States Attorney's actions is not a material consideration. *Correale*, 479 F.2d at 949 ("a prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety."). As the Supreme Court stated in *Santobello:*

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

*Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99.[9]

■ *Santobello* requires that the breach of a plea agreement be remedied by either "specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or … the opportunity to withdraw [the] plea of guilty." *Id.* The choice of remedy rests with the court and not the defendant. *Kurkculer,* 918 F.2d at 299. Here Canada seeks and we grant the former mode of relief. We do not find that the circumstances of this case demand the greater remedy of a withdrawn plea absent defendant's request for such relief. *Id.* at 300–02 (noting this court's preference for specific performance of plea agreements by sentencing before a different judge rather than vacating pleas) (citations omitted).

Accordingly, we vacate Canada's sentence and remand for resentencing before a different judge. Canada's appeal of the district court's imposition of an upward adjustment for his role in the offense is denied.

*Vacated and remanded for resentencing.*

---

**8.** Similarly, had the government, in a different setting, merely failed in so many words to recommend the 36 month sentence but called the court's attention to the written agreement under circumstances clearly consistent with recommending the agreed sentence, we would reach a different result. We are not attempting to impose a formalistic set of requirements. The problem here was that the Assistant United States Attorney's overall conduct simply did not

amount to compliance in spirit and substance with the government's agreement.

**9.** We emphasize that our opinion today in no way questions the fairness of the sentencing judge. "[T]he fault here rests on the prosecutor, not the sentencing judge." *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499. The sentencing judge was, of course, entitled and required to sentence as she believed the law and justice required.

# APPENDIX

## U.S. Department of Justice

[Seal]

*United States Attorney*
*District of Massachusetts*

*1107 J.W. McCormack Post Office and Courthouse*
*Boston, Massachusetts 02109*

February 7, 1991

Robert J. Muldoon, Jr.
Sherin & Lodgen
100 Summer Street
Boston, MA 02110

Re: *United States v. Byron Levon Canada a/k/a Barney Canada*
Criminal No. 90–10052–Z

Dear Mr. Muldoon:

This letter is written to confirm and memorialize the agreement between the Office of the United States Attorney for the District of Massachusetts ("this Office") and your client, Byron Levon Canada a/k/a Barney Canada, regarding the disposition of the above-captioned action. The agreement is as follows:

1. Mr. Canada agrees to plead guilty to all 26 counts of the Superseding Indictment charging him with conspiracy in violation of 18 U.S.C. § 371, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, inducing interstate transportation for fraud in violation of 18 U.S.C. § 2314, aiding and abetting in violation of 18 U.S.C. § 2, and bankruptcy fraud in violation of 18 U.S.C. § 152.

2. This Office agrees to forego prosecution of Mr. Canada for conduct currently known to the Government which occurred at any time between Mr. Canada's Indictment in March, 1990 and his detention in September, 1990.

3. Mr. Canada agrees to cooperate completely and truthfully with federal investigators. He agrees to answer truthfully all questions put to him, not withholding any information and neither attempting to protect any person through false information or omission, nor falsely implicating any person. Mr. Canada also agrees to furnish to the Government any documents or records in his custody or possession, or under his control, and further agrees to participate actively in any investigation, including the gathering of evidence, as is reasonably requested by the Government. Mr. Canada further agrees to testify truthfully and completely before any grand jury and at any hearing or trial should his testimony be requested. Mr. Canada understands that full cooperation for purposes of this agreement, includes information that might otherwise be privileged, including but not limited to all communications, whether oral or written, with the law firm of Forman, Roberts, Klickstein & Levy, with any of that firm's predecessor or successor firms, and with any attorneys in anyway associated with those firms at any time.

4. Mr. Canada shall at all times give complete, truthful and accurate information and testimony. Should it be determined by this Office that he has intentionally given false, incomplete or misleading testimony or information after the date of this agreement, or has otherwise violated any provision of this agreement, this agreement shall be deemed null and void by this Office, and Mr. Canada shall thereafter be subject to prosecution for any federal criminal violation of which this office has knowledge, including but not limited to perjury and false statement. Any such prosecution may be premised upon any information, statement or testimony provided by Mr. Canada, and any information and leads derived therefrom may be used against him.

5. If Mr. Canada otherwise fulfills the undertakings of this agreement, nothing contained in any statement or testimony given by Mr. Canada pursuant to this agreement or any evidence developed therefrom will be used against him in any further criminal prosecution, except a prosecution for perjury, obstruction of justice or making a false statement after the date of this agreement.

6. The disposition of this case is governed by the Federal Sentencing Guidelines

("the Guidelines") as constituted prior to the November 1, 1990 amendments.

7. While neither the defendant nor the government may bind the United States Probation Department or the Court regarding a calculation of the defendant's proposed sentence under the Guidelines, the parties acknowledge that this agreement is premised on certain calculations under the Guidelines. These calculations are as follows:

a. The base offense level for each count of conviction relating to the fraud is 6 under § 2F1.1(a).

b. The offense level is increased by 12 levels under § 2F1.1(b)(1) due to the fact that the amount of loss caused by the fraud exceeds $1,800,000.

c. The offense level of the fraud is increased by 2 levels pursuant to § 2F1.1(b)(2) because the offenses involved more than minimal planning.

d. There are no adjustments pursuant to Chapter 3 of the Guidelines. Thus, the adjustment offense level for the fraud is 20.

e. The defendant's prior criminal history, as presently known to the parties, provides a total of 3 criminal history points. Accordingly, his Criminal History Category is II.

f. The Government agrees that the defendant is entitled to a 2–point decrease in the offense level for acceptance of responsibility pursuant to § 3E1.1. Accordingly, the Guideline range from the sentencing table is 30–37 months.

8. If Mr. Canada otherwise fulfills the undertakings of this agreement, the Government agrees to recommend that the Court impose a sentence of thirty-six (36) months incarceration. The Government also agrees to recommend that the Court impose a period of supervised release of not more than 3 years, that the Court impose a special assessment of $50 on each count, that the Government will make no recommendation as to a fine, and that the Government will await the Pre–Sentence Report before making a determination as to whether the defendant is capable of making restitution. At the defendant's request the Government acknowledges that nothing in this paragraph shall be construed to limit Mr. Canada's right to seek, at some later time, early release or substitute punishment.

9. It is understood that this agreement does not and cannot bind the sentencing judge. This office will, however, inform the Probation Department and the Court of: (1) this agreement; (2) the full nature and extent of Mr. Canada's cooperation; and (3) any other information relevant to the sentence. It is also understood that Mr. Canada reserves the right to make his own sentencing recommendation to the Court.

10. Mr. Canada agrees to provide the government forthwith with the index of government documents prepared by his counsel during discovery in this case.

11. This agreement is limited to the United States Attorney's Office for the District of Massachusetts and cannot bind any other federal, state, or local prosecuting authorities.

12. No additional promises, agreements, or conditions have been entered into other than those set forth herein. This agreement may be modified only in writing signed by the government and the defendant.

If the above accurately reflects our agreement, please have your client execute this letter as set forth below.

Very truly yours,
WAYNE A. BUDD
United States Attorney
By: (s) A. John Pappalardo
A. JOHN PAPPALARDO
Associate U.S. Attorney

I have read this letter in its entirety and I have fully discussed it with my attorney, Robert J. Muldoon, Jr. I acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I am entering into this agreement freely, voluntarily, and knowingly and with a full understanding of my constitutional rights as explained to me

by my attorney. No additional promises, inducements, or representations have been made to me by any law enforcement official or any representative of the United States Attorney's Office.

(s) Byron LeVon Canada
A/K/A Barney Canada
Byron Levon Canada
a/k/a Barney Canada
2–11–91
Date

Witness: (s) Robert J. Muldoon, Jr.

Robert J. Muldoon, Jr., Esquire

2/11/91
Date