**UNITED STATES of America, Appellee,**

v.

**Brenda B. ZAPATKA, Defendant–Appellant.**

**No. 85, Docket 93–1805.**

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1994.

Decided Dec. 29, 1994.

Thomas C. Austin, Jr., East Hartford, CT (Gilman & Marks, East Hartford, CT, on the brief), for defendant-appellant.

Ronald S. Apter, Asst. U.S. Atty., New Haven, CT (Christopher F. Droney, U.S. Atty., New Haven, CT, on the brief), for appellee.

Before: VAN GRAAFEILAND, MINER and McLAUGHLIN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Brenda Zapatka appeals from the sentencing portion of a judgment of the United States District Court for the District of Connecticut (Covello, J.) which followed her plea of guilty to the offense of assisting in the filing of a materially false tax return in violation of 26 U.S.C. § 7206(2). For the reasons that follow, we vacate the sentence and remand for resentencing.

For a period of time beginning in January 1989, Zapatka and Jeffrey Campbell, with whom she had cohabited for almost a decade, were the co-owners of B & J Enterprises, Ltd., an escort service operating under the name "A Touch of Class." The escort services provided in the guise of "Class" included prostitution. Payments for the services

could be made either by cash or credit card. However, only the payments that involved written records were reported to the Internal Revenue Service. Although the business began as a partnership, some time prior to September 1989, Campbell terminated the partnership and became the sole proprietor of the business.

On January 21, 1991, four days after appellant's arrest on state charges arising out of the prostitution ring, police officers and IRS agents conducted a search of the condominium in which she and Campbell resided. The search produced business records for the period from September 1989 through December 1990, which showed that between September and December of 1989, A Touch of Class had gross receipts totalling $184,247, of which 40 percent, or $73,699, was attributed as income to Campbell. The records also indicated that the 1990 gross income of A Touch of Class approximated $960,000.

On September 9, 1993, Zapatka and Campbell appeared in district court for a Rule 11 plea hearing. They were represented by the same attorney. Zapatka pled guilty to the charge of assisting Campbell in filing a false 1989 federal income tax return. (26 U.S.C. § 7206(2)) Campbell pled guilty to the charge of conspiring to impede and impair the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of revenues. (18 U.S.C. § 371)

In the probation officer's presentence report for Zapatka, she calculated Zapatka's base offense level at 10 and recommended that it be reduced by two levels to reflect her acceptance of responsibility. Her offense level was based upon an estimated $25,573 tax loss for 1989. Her presentence report, unlike Campbell's, did not include an estimate of 1990 tax losses. The presentence report indicated that, with an offense level of 8 and a criminal history category of I, Zapatka's sentencing guideline range was 0–6 months.

Because the proceedings at the sentencing hearing are of unique importance insofar as they concern Zapatka, we quote from them at some length. At the very outset of the hearing, immediately after counsel had identified themselves, the court said:

> All right, sir, thank you. I've had an opportunity to review both of these PSI's. And I just want to tell you my initial thoughts so perhaps you can hereafter focus your comments addressed to them. First, I don't see why it is that these people shouldn't be treated equally.

The court thereafter continued:

> With respect to the lady, the Court finds the basic offense level to be 12, based upon the tax loss being greater than $70,000, and again, increases it by two, because of the income not reported resulting from criminal activity, and then assigns the lady a two level downward adjustment for her full acceptance of responsibility.

> And again, the net offense level in her case becomes 12. That being the case, the Court will commit both to the custody of the United States Bureau of Prisons for the minimum term established under the offense level of 12, of ten months, to be followed by a period of supervised release of two years. Within 72 hours of release from the Bureau of Prisons each accused will report in person to the probation office in the district to which the defendant is released.

> And in addition to the customary conditions each will pay all back taxes due and owing for the tax years 1989 and 1990.

Thereafter, the following colloquy occurred between the prosecutor and the court:

> [AUSA] Your Honor, if I may, additionally, Your Honor, with respect to Miss Zapatka's presentence report, it's the government's understanding that the guideline section that was applied by the probation office, 2(T)1.4, which is captioned "Aiding and assisting, procuring, counseling or advising tax fraud," and that was the appropriate guideline section to apply in view of the fact that she was convicted of aiding and assisting Mr. Campbell in filing the materially false 1989 return.

> Does Your Honor agree with the probation officer's use of that section? The reason I ask, Your Honor, is that Your Honor has found that Miss Zapatka, like Mr. Campbell, her offense level should be enhanced by two levels for failing to report

the criminal source of her income. And I do not—the government does not see that enhancement under section 2(T)1.4. And I wanted the Court to be aware of that.

THE COURT: It would seem from what you are saying the appropriate section would be guideline section 2(T)1.9(a)1. And the Court may have to adjust its findings one way or another, having had an opportunity to examine those guideline sections.

[AUSA] It is Your Honor's position, if I understand correctly then, that the more appropriate section in view of Miss Zapatka's equal participation in the conspiracy, would be to apply section 2(T)1.9, notwithstanding the offense of conviction being the aiding and assisting, and therefore the guidelines calculation for both would be the same? Is that the Court's finding?

THE COURT: Yes, sir, that's it.

Zapatka contends that the district judge erred in applying the guideline graciously supplied him by the prosecutor as above set forth without giving her reasonable notice of his intention to do so and an opportunity to be heard. What makes this contention unique is the contrast between the Government's rejection of guideline section 2T1.4(b) as inappropriate at the sentencing, and the prior endorsement of that section by the Government in its letter of October 25, 1993, to the probation department which read in part as follows:

With respect to Brenda Zapatka, the presentence report correctly refers to U.S.S.G. § 2T1.4 in establishing a base offense level of 10. The Government objects to paragraph 20 of the PSI, however, which concludes that none of the specific offense characteristics set forth in § 2T1.4(b) are applicable in this case. In the Government's view, defendant Zapatka derived a substantial portion, if not all of her income from defendant Campbell's tax evasion scheme, see Paragraph 55 (defendant's sole employer between 1986 and 1990 was the Touch of Class). In the Government's view, defendant Zapatka's offense level should be adjusted by two levels pursuant to U.S.S.G. § 2T1.4(b)(1). Accordingly, the Government respectfully

submits that Ms. Zapatka's adjusted offense level in this case should be a level 10, and his [sic] corresponding sentencing range should be 6–12 months.

In response to the Government's objection, the probation office wrote as follows:

The Government objects to Paragraph 20, which indicates that there are no Specific Offense characteristics in this case. The Government contends that, based on 2T1.4(b)(1), there should be a two-level increase. It indicates that Zapatka derived a substantial portion, if not all of her income from defendant Campbell's tax evasion scheme.

We respond that we do not believe this increase is appropriate in Zapatka's case. The defendant's income was derived primarily from the prostitution ring, not from the tax scheme. In fact, Application Note One indicates that subsection (b)(1) applies to persons who derive a substantial portion of their income through the promotion of tax fraud or tax evasion, e.g., through promoting fraudulent tax shelters. Therefore, the total offense level remains at 8.

The differences evidenced in the above-quoted exchange must be viewed in the light of the admonitions contained in the Guidelines themselves. Guideline section 6A1.2 provides:

Courts should adopt procedures to provide for the timely disclosure of the presentence report; the narrowing and resolution, where feasible, of issues in dispute in advance of the sentencing hearing; and the identification for the court of issues remaining in dispute.

The "Background" under this section provides in part:

Background: In order to focus the issues prior to sentencing, the parties are required to respond to the presentence report and to identify any issues in dispute. The potential complexity of factors important to the sentencing determination normally requires that the position of the parties be presented in writing.

Section 6A1.3 provides as follows:

(a) When any factor important to the sentencing determination is reasonably in

dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

(b) The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. (effective Nov. 1, 1987), notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

The commentary under this section reads in part as follows:

The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair. Although lengthy sentencing hearings should seldom be necessary, disputes about sentencing factors must be resolved with care. When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information.

The above-quoted excerpt from the section 6A1.3 commentary was quoted by the Supreme Court in *Burns v. United States,* 501 U.S. 129, 133, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991). Both the Government and Zapatka cite *Burns* in support of their respective arguments. The Government correctly points out that *Burns* requires advance notice of the sentencing judge's intentions where those intentions contemplate a departure from the Guidelines, something that has not occurred in the instant case. Zapatka, on the other hand, relies on the above-quoted commentary to section 6A1.3 and the Supreme Court's emphasis on the promotion of "focused, adversarial resolution

of the legal and factual issues relevant to fixing Guidelines sentences," 501 U.S. at 137, 111 S.Ct. at 2187, together with the Court's comment that " 'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is contemplated." *Id.* at 136, 111 S.Ct. at 2186 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

The Government relies on *United States v. Canada,* 960 F.2d 263 (1st Cir.1992), in support of its contention that advance notice was not required. In that case, as in the instant one, the adjustment made by the court was not recommended in the presentence report, and the defendant complained that he did not have advance notice as required by *Burns.* The court rejected this argument, pointing out that the *Burns* ruling applies to upward departures only:

We do not read *Burns* to require special notice where, as here, a court decides that an upward *adjustment* is warranted based on offense or offender characteristics delineated within the Sentencing Guidelines themselves, at least where the facts relevant to the adjustment are already known to defendant.

*Canada, supra,* 960 F.2d at 266. *See also United States v. Willis,* 997 F.2d 407, 416–17 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994).

Zapatka, on the other hand, relies on *United States v. Brady,* 928 F.2d 844 (9th Cir. 1991), for the proposition that advance notice is required. In *Brady,* which involved an acceptance of responsibility reduction, the sentencing court did not give notice to the defendant of its intention to deviate from the recommendations contained in the presentence report. The court there held that, since acceptance of responsibility was a factor important to the sentencing determination, the defendant should have been notified before sentencing that the court intended to deny the defendant this reduction. *Id.* at 847 n. 3.

Because the role, if any, played by Zapatka in connection with Campbell's failure to pay his 1990 taxes was a factor "reasonably in dispute," we believe Zapatka was entitled to

advance notice of the district court's ruling and the guideline upon which it was based. We recognize that the First Circuit has held that the Guidelines themselves give a defendant all the notice required regarding any adjustments a district court contemplates imposing. *See Canada,* 960 F.2d at 266. In view of the uncertainty exhibited by the court and the prosecutor concerning applicable guidelines, however, not to mention "the too-frequent inadequacy of criminal defense lawyers," this position is "unrealistic." *United States v. Jackson,* 32 F.3d 1101, 1112 (7th Cir.1994) (Posner, C.J., concurring).

Indeed, even at this late date, it is not clear what guideline the district court properly could have relied upon to warrant Zapatka's two-level adjustment. Zapatka pled guilty to the offense of assisting in the filing of a materially false income statement in violation of 26 U.S.C. § 7206(2) and should have been sentenced under section 2T1.4 of the Guidelines. Section 2T1.4 contains no "Specific Offense Characteristic" warranting the two-level increase imposed by the district court at the suggestion of the prosecutor based on Campbell's failure to file any return for 1990.

The Guidelines state that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." Section 1B1.3, Background. However, while the court may consider evidence that is neither formally charged nor an element of the offense of conviction, its right to do so is not unlimited. It appears from the truncated record that, although Campbell was given an estimate of his 1990 tax liability and failed to pay it, he was trying to establish his exact liability, and the Government did not allow him access to the records. We question whether, under the circumstances, Campbell's failure to file a 1990 return can be considered an "omission[ ] committed, aided, ... or willfully caused by the defendant; [or] ... [a] reasonably foreseeable ... omission[ ] of [another] in furtherance of the jointly undertaken criminal activity," as required by section 1B1.3. Campbell's failure to file a 1990 return had nothing to do with the offense to which Zapatka pled guilty, i.e.,

assisting in the filing of a materially false income statement for 1989.

Although we see no need to pass upon Zapatka's claim of ineffective assistance of counsel, we think it at least likely that her interests would have been better served had she been represented by separate counsel. Because the Government concedes that the two-year period of supervised release imposed upon Zapatka exceeded the one-year period prescribed in 18 U.S.C. § 3583, we likewise see no need to discuss this acknowledged sentencing error.

For all the foregoing reasons, we vacate the sentencing portion of the judgment against Zapatka and remand to the district court for resentencing.