**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13735

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE IVAN CARBAJAL,
a.k.a. Primo,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:23-cr-00056-JA-PRL-4

————————————

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jose Carbajal pleaded guilty without a plea agreement to conspiracy to traffic drugs and conspiracy to launder money. He

was sentenced to 480 months' imprisonment. He appeals his sentence, arguing that the Court erred by considering testimony and exhibits from his coconspirators' trial and sentences of unrelated defendants at his sentencing. We affirm.

## I.

From January 2017 to July 2023, Carbajal was part of a drug-trafficking organization (DTO) that trafficked thousands of kilograms of methamphetamine and fentanyl and laundered millions of dollars in drug proceeds. The DTO operated out of Florida, with drug suppliers and distributors located across the United States. Dudzinski Poole led the DTO, Carbajal was a supplier in California, and Diego Navarro-Martinez was one of Carbajal's associates.

As a supplier, Carbajal organized meetings with couriers, who would fly to California from Florida with thousands of dollars in cash[1] to buy drugs and fly them back. He and his associates also mailed at least 393 packages of drugs—multiple pounds each—to addresses that Poole provided, often vacant lots or residences of other coconspirators.[2] Once the drugs reached Florida, they were distributed to lower-level coconspirators or buyers throughout Florida and other states.

---

[1] Poole would also pay Carbajal via electronic methods, usually in small amounts through coconspirators to conceal the nature of the transactions.

[2] The Government also argued at sentencing that testimony established Carbajal was responsible for the DTO's "ghost bags" practice: bags of drugs would be checked onto a flight from California to Florida unaccompanied by a passenger and would be picked up when the flight landed.

Drug Enforcement Agents eventually executed a search warrant at one of the DTO's stash houses. Inside, officers found a vacuum-sealer, digital scales, a hydraulic drug press, baggies, approximately 833 grams of fentanyl, and approximately 183 grams of methamphetamine. They also found a loaded Taurus handgun, a WASR-10 rifle with a 30-round capacity magazine, a Glock .45 caliber magazine, and multiple rounds of ammunition.

The DTO laundered its money using several methods: transferring its proceeds between the bank accounts of various coconspirators in small amounts and in rapid succession; using the proceeds to buy various assets, such as vehicles and jewelry; and funneling the proceeds through Poole's event promotion company.

Seventeen defendants were indicted on various crimes related to the DTO. Carbajal was indicted on Count 5 for conspiracy to traffic drugs, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and on Count 6 for conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). On the eve of trial, he pleaded guilty to both counts without a plea agreement. Two coconspirators were convicted at trial on their counts, one died, and the rest pleaded guilty.

After Carbajal was convicted, the probation office filed a presentence investigation report (PSR). It stated that the converted drug weight that Carbajal was responsible for was 164,183,177 kilograms, that multiple firearms were possessed in furtherance of the conspiracy, that Carbajal's involvement in the DTO was "crucial" and "extensive," and that Navarro-Martinez was Carbajal's "enforcer and right hand man."

The PSR calculated Carbajal's base offense level at 38, and it added a two-level enhancement for money laundering, a two-level enhancement for possessing a firearm,[3] and a four-level enhancement for being an organizer or leader of an extensive criminal activity.[4] It also provided a two-level deduction for acceptance of responsibility. While those figures add up to 44, Carbajal's total offense level was 43, the maximum offense level contemplated by the Guidelines. *See* U.S.S.G. Ch. 5, Pt. A, Comment. 2. Carbajal's criminal history category was IV, and his Guidelines' imprisonment range was life.

Carbajal objected to the PSR's statement characterizing Navarro-Martinez as his enforcer and to its addition of the firearm and leadership enhancements. The probation office responded that the statement about Navarro-Martinez was correct and that the enhancements were warranted.

Carbajal filed a sentencing memorandum discussing the sentencing factors, arguing for a downward variance, and expanding on his objection to the leadership enhancement. The Government

---

[3] "If a dangerous weapon (including a firearm) was possessed, increase [the defendant's offense level] by 2 levels." U.S.S.G. § 2D1.1(b)(1).

[4] "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [his offense level] by 4 levels." U.S.S.G. § 3B1.1. "To qualify for an adjustment under this section, the defendant must have been the organizer [or] leader . . . of one or more participants." U.S.S.G. § 3B1.1 Comment. 2.

filed a sentencing memorandum that referenced testimony and exhibits from the coconspirators' trial when describing Carbajal's role in the DTO.[5]

At his sentencing, Carbajal repeated the three objections he made to the PSR. He began with his objection to the characterization of Navarro-Martinez as his enforcer, maintaining that Navarro-Martinez was just a good friend. The Court responded that there was testimony from the coconspirators' trial that Navarro-Martinez was called "Shooter" or "Killer." And the Government added that Poole had testified at the trial that Navarro-Martinez was Carbajal's "muscle" and that Carbajal planned to use Navarro-Martinez to help murder another coconspirator.[6] In response, Carbajal stated he did not have the opportunity to cross-examine Poole at the trial. The Court agreed Carbajal did not have a chance to cross-examine but determined there was enough evidence in the record to overrule the objection and, thus, overruled it.

Carbajal repeated his objection to the firearm enhancement. He stated that "[i]t was not reasonably foreseeable" to him that others in the DTO possessed firearms, but he acknowledged that the

_____

[5] The Government filed one sentencing memorandum for all sixteen defendants, with specific sections dedicated to each individual.

[6] The Government also stated that another person's testimony implied that Navarro-Martinez answered to Carbajal and helped Carbajal maintain the drugs and the DTO.

caselaw was not on his side.[7] The Court overruled the objection, citing the facts of the case as presented at trial and our Court's precedent on the issue.

Finally, Carbajal repeated his objection to the leadership enhancement, stating that there was no evidence that he "was involved in directing or coordinating anything other than . . . shipments of narcotics"; that he did not exercise significant control or decision-making authority over the DTO's activities; and that, despite the Court's ruling on his previous objection, he did not exercise control over Navarro-Martinez. He also noted that it was Poole's DTO and that he was only one of "several sources" in California.

In response, the Government stated that the DTO's practice of shipping drugs in the mail "was not at Mr. Poole's direction," but was instead "developed" by Carbajal. It acknowledged that Poole was the "top level" leader of the DTO but maintained that

---

[7] Our Circuit has held that a firearm enhancement based on a coconspirator's gun possession applies if "the [G]overnment . . . show[s] by a preponderance of the evidence that (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of the possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Westry*, 524 F.3d 1198, 1221 (11th Cir. 2008) (internal quotation marks omitted). We have also held that "guns are a tool of the drug trade," so it is "reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006).

"without Jose Carbajal, there is no Dudzinski Poole. There is no Poole organization."

After an extended conversation with the parties, the Court, stating that it had reviewed the different leadership factors, over-ruled the objection to the leadership enhancement. It stated that "the two primary people in this operation were Mr. Poole and Mr. Carbajal" and that they were the ones who "put all this in motion." Though Carbajal's decision-making authority may not have been "quite as great as Mr. Poole's," it was "significant. He was the sup-plier. It was basically a two-person operation."[8]

The Court adopted the Guidelines calculations in the PSR, which provided a total offense level of 43, a criminal history cate-gory of IV, and a Guidelines sentence of life imprisonment. The Court also stated that it had read the many letters filed with the Court on Carbajal's behalf and turned to the parties for their sen-tence requests.

Carbajal's attorney explained that much of Carbajal's crimi-nal history "has to do with" his addictions to drugs and alcohol. He mentioned that Carbajal "grew up on the streets" with a single mother after his father passed away, that he witnessed a murder

---

[8] Additionally, the Government objected to the two-point reduction in the Guidelines calculation for acceptance of responsibility as Carbajal did not plead guilty until after the Government turned over its list of cooperators, but it stated that "it's a technical objection that doesn't substantively make a dif-ference" as it doesn't change the Guidelines calculation. The Court overruled the objection.

and violence when he was young, and that he fell in with a bad crowd that ultimately led him down this path. He also stated that Carbajal was using alcohol and drugs throughout most of his participation in the DTO, that he had untreated mental health issues, that he showed remorse and accepted responsibility, and that he was a good father and wanted to give his family a better life. He stated that a life sentence was not necessary and asked for a sentence "somewhere in the mid-teens."

In response, the Government argued that Carbajal's sentence "should be very, very significant." It stated that he accepted responsibility at "basically, the last second" and noted that his crime involved "thousands of pounds of probably the two most significant drugs in our world." It maintained that the DTO would not have existed without Carbajal, and it explained that, for Carbajal to transport the amount of drugs that he did, he must have been "somebody extremely close to the very top-of-the-line drug distributors coming from Mexico." Ultimately, "there was very, very little mitigation at all in terms of the significance of who [Carbajal] was as a drug dealer," and no mitigation was warranted for accepting responsibility because he did it "on the eve of trial."

The Government then told the Court that two unrelated defendants convicted for a different drug trafficking conspiracy were sentenced to 38 and 35 years' imprisonment and that "neither one . . . compare[d]" to Carbajal. It acknowledged that Carbajal had a hard life growing up, but stated that while those circumstances may be mitigating in some cases, they were not mitigating here as

Carbajal was a grown man, made millions of dollars off the conspiracy, held a significant position in the DTO, had years to stop his conduct, and did not plead guilty until the last minute. The Government also characterized the "hit" that Carbajal put out on his coconspirator as an aggravating factor. It ultimately asked the Court for a "significant, significant sentence"—"life or . . . something akin to it." The Court asked for the criminal history categories of the unrelated defendants, and the Government stated that the one who received the 38-year sentence had a category of VI.

The Court sentenced Carbajal to concurrent terms of 480 months' imprisonment for Count 5 and 240 months for Count 6, followed by concurrent terms of five years' supervised release for Count 5 and three years for Count 6. The Court then explained its ruling, stating that Carbajal had a history of drug offenses, with at least one involving a firearm, and that the substances in the instant offense "were deadly" and in "amounts . . . greater than [the Judge had] ever seen." It added that "[t]here's no way that this offense could be described as anything but vast and extraordinary." The Court stated that it considered all the evidence presented at sentencing and the facts in the PSR, the nature and quantity of the substances involved, the presence of firearms, Carbajal's historic substance abuse, his family situation, and his family support. It also noted that it "had some experience in the case, having dealt with other defendants and having sat through a lengthy trial involving two other defendants," and it explained that it would have imposed the same sentence regardless of its ruling on the leadership enhancement The Court then asked if there were any objections to

the sentence or the manner in which it was pronounced. Carbajal made no objections.

Carbajal timely appeals, arguing that the Court erred in considering the testimony and exhibits from his coconspirators' trial and the sentences of unrelated defendants as it did not provide prior notice that it would engage in such consideration.

## II.

We review de novo constitutional challenges to a defendant's sentence. *United States v. Bowers*, 811 F.3d 412, 430 (11th Cir. 2016). However, when a defendant fails to object before the district court to an alleged constitutional error, we review for plain error. *See United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005).

"To establish plain error, a defendant must show: (1) an error; (2) that was obvious; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dudley*, 5 F.4th 1249, 1255 (11th Cir. 2021). An error is obvious if "the explicit language of a statute[,] rule," or binding court precedent directly resolves it. *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019).

On appeal, Carbajal argues that the Court improperly considered testimony and exhibits from his coconspirators' trial at his sentencing both because the Court did not provide notice that it would consider the evidence and because he did not have the ability to cross-examine at the trial. He also argues that the Court erred by considering the sentences of unrelated defendants because he

did not have notice that the information would be used and did not have the opportunity to rebut it. While Carbajal did clearly object to the use of the testimony, he did not object to the use of the exhibits or the use of the sentences.[9] He also did not object to notice. We therefore review de novo the Court's use of the trial testimony, and we review all other issues for plain error. We begin by discussing the issues stemming from the trial evidence; we then discuss the issues with the unrelated defendants' sentences.

*A.*

We begin with Carbajal's argument that the Court erred by not providing notice that it would consider the testimony and exhibits from the coconspirators' trial, making the subsequent opportunity to respond meaningless.

"[S]entencing procedures are not required to be as exacting as those at trial," but "due process requires that a criminal defendant have adequate notice of, and an opportunity to contest, the facts used to support his criminal penalty." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018).

Though the Court did not explicitly inform Carbajal that it would consider testimony and exhibits from the coconspirators'

---

[9] Though the exhibits, of course, were part of the same trial that the testimony came from, we cannot read his specific objection to the testimony to also be an objection to the exhibits. *See United States v. Brown*, 934 F.3d 1278, 1306 (11th Cir. 2019) ("[T]o preserve an objection . . . , a party must raise th[e] point in such clear and simple language that the trial court may not misunderstand it." (internal quotation marks omitted)).

trial at his sentencing, the Government filed a sentencing memorandum that referenced the testimony and exhibits. This alerted Carbajal that the evidence would come up at sentencing and, as such, that the Court might consider it. Indeed, we have held that a defendant received adequate notice that the Court would rely on trial testimony at his sentencing where the Government's opening statement referenced the testimony and the defendant was present during the testimony. *Plasencia*, 886 F.3d at 1343–45. The fact that the evidence at issue here was not from the defendant's own trial is of no consequence. The Government mentioned the trial evidence in its sentencing memorandum, and Carbajal was familiar with the evidence referenced.[10] He therefore received adequate notice that the Court would rely on that evidence. There was no error. Carbajal's argument fails under the first prong of plain error review. We need not consider the other prongs.

*B.*

We now turn to Carbajal's argument that, regardless of notice, the Court erred by considering the testimony and trial exhibits from his coconspirators' trial. He maintains that he did not have

---

[10] Carbajal confirmed familiarity with the record multiple times during the sentencing hearing and, regardless, makes no argument that he did not have access to the referenced evidence. He therefore waives any argument on that front. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly so indicate . . . . At the very least, he must devote a discrete, substantial portion of his argumentation to that issue. Otherwise, the issue . . . will be considered abandoned.").

the chance to cross-examine at trial, so consideration of the evidence violated his due process rights.

As stated above, "due process requires that a criminal defendant have adequate notice of, and an opportunity to contest, the facts used to support his criminal penalty." *Plasencia*, 886 F.3d at 1343. However, "sentencing procedures are not required to be as exacting as those at trial," and the "degree of due process protection required at sentencing is only that which is necessary to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner." *Id.* Ultimately, the defendant's "primary due process interest at sentencing is the right not to be sentenced on the basis of invalid premises or inaccurate information." *Id.* As such, while "evidence presented at the trial of another may not—*without more*—be used to fashion a defendant's sentence if the defendant objects," it is permissible if the defendant "had the opportunity to rebut the evidence or generally to cast doubt upon its reliability." *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990). In other words, the sentencing court can consider evidence from another's trial so long as it follows "the procedural safeguards incorporated in section 6A1.3 of the guidelines," *id.*, which requires that the parties be given an adequate opportunity to present information to the court regarding

14                  Opinion of the Court                  24-13735

factors important to the sentencing determination that are reasonably in dispute, U.S.S.G. § 6A1.3(a).[11]

1.

Carbajal objected at sentencing to the Court's consideration of the trial testimony in fashioning his sentence, so we review de novo.

It is undisputed that Carbajal did not have the opportunity to cross-examine at the coconspirators' trial. However, he had the opportunity at sentencing to rebut the testimony from it and to cast doubt on its reliability. For example, when discussing Carbajal and Navarro-Martinez's relationship, Carbajal confirmed he had reviewed the relevant trial testimony; stated that he did not have the opportunity to cross-examine on it; and argued that the two were just friends, that they were both just participants in the DTO, and that the DTO had multiple California sources. And, when asked about Poole's testimony regarding Carbajal's plan to murder a coconspirator, Carbajal stated that he did not have the chance to cross-examine Poole and that there was no evidence about the plan other than Poole's testimony on it. The Court followed the procedural safeguards of Section 6A1.3 of the Guidelines, so its consideration of testimony from the coconspirators' trial was permissible. Carbajal's due process rights were not violated.

---

[11] Though hearsay is ordinarily not admissible, Fed. R. Evid. 801, "the law of this Circuit clearly provides that reliable hearsay can be considered during sentencing." *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001).

2.

Carbajal did not object at sentencing to the Court's use of the trial exhibits in fashioning his sentence, so we review for plain error. However, we note at the outset that the analysis looks very similar to the analysis of the trial testimony's use as we do not find error in either situation.

Like the testimony, Carbajal had the opportunity at sentencing to rebut the exhibits and cast doubt on their reliability. For example, when discussing the flight records, he stated that Poole was the one directing people to fly to California and that Carbajal was one of many California sources. And, when discussing the financial transactions connected to bank accounts in Carbajal's name, Carbajal opined that Poole may have been the one who actually created those accounts. The Court, again, followed the procedural safeguards of Section 6A1.3, so its consideration of the exhibits from the coconspirators' trial was permissible. There was no error. Carbajal fails under the first prong of plain error review. We need not address the other prongs.

C.

Finally, Carbajal states, in the "lack of notice" section in his brief, that the Court erred in not providing notice that it would consider the sentences of unrelated defendants at his sentencing, making the opportunity to respond to the sentences an "empty gesture." He then states in his "violation of due process" section that the Court's consideration of the unrelated defendants' sentences violated his due process rights because he had no notice it would

consider the evidence and no opportunity to rebut it. While Carbajal presents these as two separate arguments, they are one and the same: the Court erred by considering the sentences of unrelated defendants where Carbajal did not have notice that those sentences would be considered. The Government responds that the Sentencing Guidelines provided Carbajal the necessary notice.

A sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, as stated above, "due process requires that a criminal defendant have adequate notice of, and an opportunity to contest, the facts used to support his criminal penalty." *Plasencia*, 886 F.3d at 1343.

Though the Sentencing Guidelines provide a defendant notice that the Court is to consider sentences of similarly situated defendants, they do not provide notice of the specific defendants involved. For notice that a general type of information may come up is different from notice that specific facts will be considered. *See Plasencia*, 886 F.3d at 1344 n.8 (collecting cases that state that the Sentencing Guidelines provide advance notice to the defendant that certain facts will be considered where the defendant is *already* on notice of the existence of those facts); *United States v. Canada*, 960 F.2d 263, 266 (1st Cir. 1992) (explaining that advance notice of an upward adjustment to the Guidelines range is not required where that adjustment "is warranted based on offense or offender

characteristics delineated within the Sentencing Guidelines themselves, *at least where the facts relevant to the adjustment are already known to [the] defendant*" (emphasis added)). As such, Carbajal had no notice that the sentences of these specific unrelated defendants would be considered at his sentencing. The Court therefore erred in considering the sentences.

It is arguable, though, whether this error was obvious. While we have expressly stated that a defendant is owed "adequate notice of . . . the facts used to support his criminal penalty," *Plasencia*, 886 F.3d at 1343, Carbajal does not provide us a case where we expressly state that the specific comparator defendant constitutes one of those facts. However, it could be said that, because the identity of the defendant is a fact in and of itself, the error was obvious under our precedent. It's unnecessary, though, for us to make that determination here, because, regardless of prong two, Carbajal would lose under prong three of plain error review as the Court's error did not affect his substantial rights.

Any consideration the Court gave to the sentences of the unrelated defendants was fleeting and tangential. After the Government mentioned the unrelated defendants, the Court simply asked what their criminal histories were and then moved on. Further, the Court later stated that its sentencing decision was based on Carbajal's criminal history, his personal history and characteristics, and the nature and circumstances of the instant offense. Consideration of the unrelated defendants' sentences made up, at most, only a minor fragment of the Court's sentencing decision. And where the

district court's consideration of an impermissible factor at sentencing reflects "only a minor fragment of the court's reasoning," the defendant's substantial rights are unaffected. *United States v. Vandergrift*, 754 F.3d 1303, 1312 (11th Cir. 2014).

The Court did not plainly err in considering the sentences of unrelated defendants where Carbajal did not have prior notice of that consideration.

## III.

For the foregoing reasons, we affirm the sentence imposed by the District Court.

**AFFIRMED.**