[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**June 23, 2004**
**THOMAS K. KAHN**
**CLERK**

_____

No. 01-17133

_____

D. C. Docket No. 99-08125-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAPHAEL R. LEVY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 23, 2004)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Defendant Raphael R. Levy ("Levy") entered into a written plea agreement, in which he pled guilty to two offenses and the government agreed to recommend concurrent sentences. Although the government recommended concurrent

sentences at the sentencing hearing, the district court sentenced Levy to consecutive sentences for the two offenses. Levy now appeals his sentences, arguing that the government breached the plea agreement and that the district court deprived him of due process. After review and oral argument, we affirm Levy's sentences.

## I. FACTUAL BACKGROUND

### A.     Offenses

On December 13, 2000, a federal grand jury returned a 52-count indictment charging Levy and twelve codefendants with various offenses related to a large-scale fraud. In this scheme, Levy, his codefendants, and others solicited funds under the guise of investing the funds in viatical settlements.[1] Levy and his codefendants invested only a small portion of the investors' money in viatical settlements and spent most of the money purchasing houses, cars, boats, and other luxury items for themselves. The scheme defrauded investors of more than $117 million.

The indictment charged Levy with: (1) conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 371 (count 1); (2) mail fraud, in violation of 18

---

[1]A viatical settlement involves the purchase of a life insurance policy or its benefits at a discounted rate from a terminally ill person. The investing purchaser of the policy receives the full amount of the insurance policy when the policyholder dies.

U.S.C. §§ 1341 and 2 (counts 2-13); (3) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B), 1957, and 1956(h) (count 15); (4) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (counts 46-49); and (5) other forfeiture counts.

## B.    Plea Agreement

Pursuant to a written plea agreement, Levy pled guilty to counts 1 and 15, conspiracy to commit mail fraud and conspiracy to commit money laundering, with the object of the conspiracy being limited to violations of 18 U.S.C. § 1957. In the plea agreement, the government agreed: (1) to dismiss the multiple remaining counts of the indictment; (2) not to oppose Levy's request to reduce his sentence for acceptance of responsibility; (3) that the total funds Levy derived from the scheme was $10,871,222.71; (4) to consider filing a U.S.S.G. § 5K1.1 sentence-reduction motion if Levy cooperated; and (5) to recommend that the court impose sentences on counts 1 and 15 to be served concurrently.[2]

---

[2]As to the concurrent sentence recommendation, the plea agreement stated: "Although not binding on the Probation Officer or the Court, as a special condition of this plea agreement the United States and the defendant hereby stipulate and agree as follows: . . . (c) the United States agrees to recommend to the Court that any sentence imposed by the Court as to Counts One and Fifteen be served concurrently."

The plea agreement noted that the sentencing court may impose a statutory maximum term of imprisonment of up to five years for count 1 and up to ten years for count 15. Specifically, the plea agreement stated:

> The defendant understands and agrees that the court may impose any sentence authorized by law and that the defendant may not withdraw his plea solely as a result of the sentence imposed. The defendant also understands and agrees that the court may impose a statutory maximum term of imprisonment of up to five (5) years as to Count One, followed by a term of supervised release which can be imposed for a maximum period of three years. The defendant also understands and agrees that the court may impose a statutory maximum term of imprisonment of up to ten (10) years as to Count Fifteen, followed by a term of supervised release which can be imposed for a maximum period of three years. . . .

Significantly, the plea agreement also included this sentencing appeal waiver:

> [I]n exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742, to appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing.

## C.    Presentence Investigation Report

The probation officer's Presentence Investigation Report ("PSI") detailed the involvement of Levy and his codefendants in the fraud and recommended a guideline sentence for Levy. The PSI grouped together counts 1 (conspiracy to commit mail fraud) and 15 (conspiracy to commit money laundering) and

4

determined Levy's base offense level was six under U.S.S.G. § 2F1.1, which applies to his mail fraud conviction.[3] The PSI recommended a thirty-level increase for an offense level of thirty-six based on these sentencing enhancements: (1) an eighteen-level enhancement pursuant to U.S.S.G. § 2F1.1(b)(1)(S) because the loss was more than $80,000,000; (2) a two-level increase pursuant to U.S.S.G. § 2F1.1(b)(2) because the offense involved more than minimal planning or a scheme to defraud more than one victim; (3) a two-level increase pursuant to U.S.S.G. § 2F1.1(b)(3) because the offense was committed through mass marketing; (4) a two-level increase pursuant to U.S.S.G. § 2F1.1(b)(6)(C) because the offense involved sophisticated means; (5) a two-level enhancement pursuant to U.S.S.G. §3A1.1(b)(1) because Levy knew or should have known that the victims were unusually vulnerable;[4] and (6) a four-level increase pursuant to U.S.S.G. § 3B1.1(a) for Levy's role as "an organizer or leader."

From the offense level of thirty-six, the PSI subtracted three levels for Levy's acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b)(1). With a

---

[3]Unless otherwise noted, all references are to the 2000 version of the Sentencing Guidelines. U.S.S.G. § 3D1.3(b) instructs that the offense producing the highest offense level should be used.

[4]The PSI explained that the fraudulent scheme involved over 3,000 victims, many of whom were senior citizens who had "lump sum payments available for investment that represented their 'life's savings.'" The PSI noted that some of the victims were physically infirm, while others were emotionally vulnerable due to the loss of a spouse.

5

criminal history category of I and a total offense level of thirty-three, Levy's guidelines range of imprisonment was 135 to 168 months.

The PSI noted that, under U.S.S.G. § 5G1.2(d), sentences for multiple offenses should run concurrently unless the maximum sentence for the offense with the highest statutory maximum (here, 120 months for money laundering) is less than the total punishment recommended by the guidelines (here, 135 to 168 months), in which case the sentences should run consecutively only to the extent necessary to produce a sentence equal to the total guideline punishment.[5] Because the statutory maximum for count 15 was 120 months, but the recommended guideline sentence was 135 to 168 months, the PSI explained that the sentences should run consecutively to the extent necessary to equal the recommended guideline sentence. Ultimately, as explained later, the district court did this and imposed consecutive sentences of ten years on count 15 and four years on count 1 for a total sentence of 168 months.

---

[5]U.S.S.G. § 5G1.2(d) states:
If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.
U.S.S.G. § 5G1.2(d).

6

Prior to the sentencing hearing, Levy's counsel filed written objections to the PSI. Among other items, Levy objected to the PSI's vulnerable victim and role enhancements. In an addendum to the PSI, the probation officer stated:

> The information in the role assessment section of the PSI was obtained from the government. According to AUSA Carlton, the information in that section is accurate as written. The AUSA will present additional testimony and evidence if needed.

After the probation officer filed this addendum and before the sentencing hearing, the government filed its Notification of Sentencing Position with the court. The government informed the court that it could not present evidence at the sentencing hearing to support the increased adjustments without violating the plea agreement because it "obligated itself to recommend that any sentence issued by this Court be served concurrently; this contractual obligation limits the government to recommend a sentence not greater than 120 months." The government acknowledged that the probation officer recommended a sentence in excess of 120 months, but explained that it "cannot produce evidence at the sentencing hearing that would support all of these increased adjustments without violating its plea agreement."

In his formal objections to the PSI, Levy stated that, after reviewing the probation officer's written response to his objections to the PSI with the government, the government agreed with his objections to the four-level enhancements for vulnerable victims and role in the offense. Further, Levy contended that he and the government agreed that his role in the conspiracy was better characterized as a "manger or supervisor of criminal activity," which would warrant only a three-level, not a four-level increase. This computation would make his total offense level 30 and result in a guideline range of 97 to 121 months.

The probation officer filed a second addendum to the PSI and stated that the AUSA advised him that the government must "abide by its sentencing recommendations even in the face of a contradictory presentence investigation report," and that, under United States v. Taylor, the government could not present evidence at the sentencing hearing that "would support both the vulnerable victim adjustment and the adjustment for the defendant's role in the offense." The second addendum further stated that the government "may respectfully decline to present supporting evidence as it deems appropriate to comply with its contractual obligations with the defendant." It concluded that the court "will need to make a factual

8

finding based on the information contained in the presentence investigation report as to whether [the enhancements apply]," and noted that the court "previously upheld the four level enhancement for a large number of vulnerable victims" at the sentencings of Levy's codefendants relying on the same information.

## D. Sentencing Hearing

At the sentencing hearing, Levy's counsel again objected (1) to the PSI's conclusion that a vulnerable victim enhancement was appropriate at all, and (2) to the PSI's determination that a four-level, rather than a three-level, enhancement was appropriate for Levy's role in the offense. Levy's counsel also argued that the government breached the plea agreement, possibly inadvertently, because it provided factual information about his offenses to the probation officer, who in turn used that information in preparing the PSI and recommending a sentence longer than 120 months.

In response to Levy's first two objections, the government advised the district court that it was required by the plea agreement to recommend concurrent sentences for counts 1 and 15 and, therefore, was bound to refrain from recommending any enhancements that would result in a sentence over 120 months. The government stated that because of its contractual obligation and <u>United States</u>

v. Taylor, 77 F.3d 368 (11th Cir. 1996), it could not provide evidence supporting the PSI's sentence enhancements that would increase Levy's sentence to over 120 months. The prosecutor explained, "[A]lthough I might have the ability to present such evidence that would support a vulnerable victim adjustment, I believe as an officer of the Court I cannot do that. I do that with a heavy heart, mindful of my obligation to live by the obligation that the United States imposed on itself in inducing a plea, a guilty plea to a ten year felony."

Although acknowledging having provided information to the probation officer, the prosecutor advised that he did not know the probation officer would use the information to recommend a sentence longer than 120 months. Moreover, the government asserted that the only two remedies for a breach of the plea agreement were (1) withdrawal of the plea, which Levy did not want, and (2) specific performance of the agreement. The government stated that it would provide specific performance by recommending a concurrent sentence of 120 months' imprisonment.

In response to the district court's questioning whether the plea agreement expressly prohibited the government from providing evidence on the vulnerable victim enhancement, the government replied, "It did not, Your Honor, but it did

contract the Government to recommend concurrent time. That is what leads me to conclude that my hands are bound."

The district court then questioned the government "whether there is any other entity permitted to or capable of offering evidence at this point on this issue other than the Government." The prosecutor replied that because the only two parties in the case were the United States and Levy, there was no one to put forth such evidence. The court then asked if anyone else wished to be heard on the issue, and John Kozyak, a court-appointed restitution officer and a bankruptcy attorney representing the creditor-victims of the three corporate codefendants in the criminal case, addressed the court. Levy's counsel objected, but the court permitted Kozyak to speak.

After Kozyak spoke about the victims' vulnerability, the district court permitted nine victims to testify. At this point, the government reiterated that it was not putting forth this evidence. The court questioned the victims about their ages and their losses as a result of the scheme. After each witness spoke, the court asked both the government and Levy's counsel whether they wanted to ask questions, and both declined to question any victims.

At the conclusion of the victims' testimony, Levy's counsel again objected to the portion of the PSI that indicated that the scheme targeted individuals who

11

were mentally and physically infirm. The district court sustained Levy's objection, explaining that there was no "evidence showing that the viatical insurance policies were sold to people who were physically impaired, and certainly not to people who were mentally impaired." Nonetheless, the district court found that a two-level vulnerable victim enhancement applied because "this was a fraud scheme that targeted senior citizens who were retired" and the victims were particularly vulnerable because of "the desire to safeguard their life savings and the representations that were made to them that this was exactly that type of [an] investment." The district court explained that "in making this determination now what [it] relied upon is the evidence presented . . . here today in the courtroom."

With regard to Levy's role in the offense, the government advocated only a three-level enhancement as opposed to the four-level enhancement recommended in the PSI.[6] Levy's counsel also advocated only a three-level enhancement and stated, "I want to thank the prosecutor for fulfilling his role to seek justice, and I want to say that I agree with him." The district court ultimately concluded that a

---

[6]In advocating only a three-level role enhancement, the government emphasized that the scheme did not begin with Defendant Levy: "[I]t would be misleading to say this crime started with Mr. Levy or he came up with the grand idea. He had the mechanism and access to the brokers that enabled large sums of money or investors to be contacted nationwide. This scheme started with Fred Brandau and Zane Balsam, and those two were the persons who benefitted most."

four-level enhancement was appropriate for Levy's role in the offense. During the hearing, the government further reiterated, "with regard to the overall sentencing information from the government, because of the contractual obligation, we will be recommending that the court impose concurrent time as to both sentences."

The district court concluded that Levy had a total offense level of thirty-three and a criminal history category of I, resulting in a guideline range between 135 and 168 months. The government recommended a sentence at the bottom of the guideline range. The prosecutor stated, "I think that it is incumbent upon me as an officer of the court to alert your honor that it is our position that given the concurrency recommendation, we recommend that you sentence at the bottom applicable guideline."

The district court sentenced Levy to 120 months for count 15 and to 48 months for count 1, with the sentences to be served consecutively, for a total sentence of 168 months. Levy's counsel again objected to the PSI because "it was infected with comments by the Government that should not have been provided pursuant to our agreement with the United States." Levy's counsel also objected again to the vulnerable victim and role enhancements.

## II. STANDARD OF REVIEW

This Court reviews <u>de novo</u> the legal question of whether the government breached its plea agreement with Levy. <u>See</u> <u>United States v. Carlson</u>, 87 F.3d 440, 447 (11th Cir. 1996).

### III. DISCUSSION

At the outset, we note that in his plea agreement Levy waived his right "to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing." The sentencing court's vulnerable victim and role enhancements do not fall into either of the two exceptions to the appeal waiver. Thus, Levy is bound by the plea agreement and waived his right to appeal the vulnerable victim and role enhancements.

Rather, Levy makes these two main arguments on appeal. First, Levy contends that the government breached its plea agreement by providing information about his offenses to the probation officer and by its comments before the district court during the sentencing hearing. Second, Levy contends that the district court deprived him of due process by permitting the creditors' attorney to speak and by allowing victims to testify during his sentencing hearing. We address each argument in turn.

**A.     Plea Agreement**

14

Under the plea agreement, the government was obligated to recommend concurrent sentences for counts 1 and 15. The statutory maximum for count 15 was ten years and the statutory maximum for count 1 was four years. Levy contends that the government's obligation to recommend concurrent sentences effectively meant that it could not recommend a sentence longer than ten years. Levy argues that the government failed to abide by this requirement before sentencing because it provided the probation officer with factual information that ultimately led to the PSI's recommended sentence of more than ten years' imprisonment. Levy contends that the government also violated the plea agreement by making "grudging and apologetic remarks" during the sentencing hearing. Both of Levy's arguments lack merit for several reasons.

First, Levy's plea agreement did not bind the government to refrain from providing factual information to the probation officer – it only required that the government recommend to the court that Levy's sentences be served concurrently, which the government did. Providing factual information about Levy's offenses to the probation officer, who would then make his own recommendations to the sentencing court, did not conflict with the government's contractual obligation to recommend concurrent sentences to the court. Therefore, the government did not violate the plea agreement by providing such information to the probation officer.

15

Second, it was also unreasonable for Levy to expect that the government would not provide information about his offenses to the probation officer. Indeed, Levy's plea agreement stated: "The defendant agrees that he cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding . . . ."

We fully recognize that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971). Whether the government violated a plea agreement "'is judged according to the defendant's reasonable understanding at the time he entered his plea.'" Taylor, 77 F.3d at 370 (citation omitted). Further, "[i]f the defendant's understanding is disputed by the government, we determine the terms of the plea agreement according to objective standards." United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992).

In Levy's plea agreement, there was no restriction on the government providing factual information to the probation officer. Further, Levy himself agreed to provide "truthful and complete information and testimony." In making

16

his argument, Levy primarily relies on United States v. Taylor and United States v. Rewis, but both cases are markedly different and inapplicable to this case.

In Taylor, the defendant was indicted on six drug counts. 77 F.3d at 369. In the plea agreement, the defendant pled guilty to only one count of possession of marijuana with intent to distribute, and the government agreed to recommend that the defendant be sentenced to ten years' imprisonment. Id. The PSI, however, included defendant's attempt to import 500 kilograms of cocaine and recommended a sentence of 188 to 235 months. Id. When the defendant objected, the government responded: "The government was prepared to prove beyond a reasonable doubt that this defendant conspired to import cocaine into the United States. At sentencing, the government is prepared to prove the same by a preponderance of the evidence pursuant to Sentencing Guidelines § 6A1.3." Id.

At sentencing, the defendant in Taylor attempted to substitute new counsel and obtain a continuance to develop arguments regarding the withdrawal of his plea. Id. The district court denied the continuance and adopted the PSI's position about the defendant's cocaine activities. Because of his acceptance of responsibility, the defendant's guidelines range was reduced to 151 to 188 months. Id. at 369-70. The court sentenced the defendant to 151 months' imprisonment, but this Court reversed. Id. at 370.

17

On appeal, the government in Taylor conceded that its support of the PSI's position regarding the 500 kilograms of cocaine was "completely incompatible" with its plea agreement to recommend a sentence of ten years. Id. at 371. The government argued that its recommendation of a ten-year sentence, however, cured the problem. Reversing, this Court disagreed and concluded that "[i]n its statements responding to Taylor's objections to the PSI, the government advocated a position contrary to its agreed-upon recommendation." Id.

Levy's case is readily distinguishable from Taylor. In Taylor, the government responded to Taylor's objections to the PSI that it was prepared to prove the defendant's cocaine-related activities beyond a reasonable doubt. Id. at 369. In this case, however, the probation officer responded to Levy's objections to the PSI and stated that "[a]ccording to AUSA Stephen Carlton, the statements in the PSI are correct and accurate. The AUSA will present additional testimony and evidence if needed." Although the probation officer represented in the addendum that the government would advocate a position contrary to the plea agreement, the government did not. Instead, in its Notification of Sentencing Position, the government informed the court that it would not present evidence that would increase the guideline range over 120 months, including evidence supporting the vulnerable victim enhancement and the four-level role enhancement. The

18

government then met with Levy's counsel and agreed that Levy's role in the conspiracy warranted only a three-level increase which would result in a guideline range of 97 to 121 months. Finally, the probation officer filed a second addendum and advised the court that the government "may respectfully decline to present supporting evidence as it deems appropriate to comply with its contractual obligations with the defendant."

In contrast to the government's written statement in Taylor, the government did not affirmatively advocate a position contrary to its plea obligations. The government only provided information to the probation officer about the fraudulent scheme, and, when the probation officer recommended a sentence longer than that agreed to in the plea agreement, the government refused to present evidence supporting those enhancements. Not only did the government not breach the plea agreement, but it went to great lengths to abide by the terms of the agreement.

United States v. Rewis also is distinguishable. In Rewis, the defendant negotiated a plea agreement in which the government specifically reserved the right to inform the probation office and the court of "all relevant facts regarding the offenses." 969 F.2d at 987. The plea agreement also bound the government not to recommend a sentence at all. Id. In its sentencing memorandum, however,

19

the government stated that Rewis had been uncooperative, "would rather remain an 'outlaw smuggler' with a code of silence and intimidation," and "should not be rewarded for deciding to remain silent and part of the problem." Id. The government's sentencing memorandum concluded that "[b]y taking into account the extent of defendant's illegal activity and the fact that he has rebuffed all efforts of law enforcement to gain his cooperation, this Court will establish a wide-ranging deterrent for those who would follow the illegal footsteps of the defendant." Id.

In Rewis, this Court concluded that the defendant Rewis had a reasonable understanding that the plea agreement allowed the government "to comment on the particular offenses only" and prohibited the government from suggesting a sentence. Id. at 988. Thus, the government broke Rewis's reasonable understanding of the plea agreement by effectively suggesting a harsh sentence and by "dwelling on Rewis' noncooperation" when its right to allocution was limited to facts relevant to the offenses. Id.

In both Taylor and Rewis, the government affirmatively advocated to the district court positions that contradicted its express obligations under the plea agreements. In this case, however, the government provided only factual information about Levy's offenses to the probation officer. Further, it was

20

unreasonable for Levy to believe that the government's obligation to recommend concurrent sentences would be breached by the government providing information to the probation officer about the fraudulent scheme to which Levy pled guilty.

## B. Government's Conduct at Sentencing Hearing

Levy also argues that the government breached the plea agreement through its conduct at the sentencing hearing. Specifically, Levy contends that the government's "grudging and apologetic" references to the plea agreement, along with its assertions that "our hands are tied" and that its sentencing recommendation was given "with a heavy heart," communicated the government's "true position" of recommending a sentence longer than 120 months. We disagree.

Levy cites United States v. Canada, 960 F.2d 263 (11th Cir. 1992), in support of his contention that the government's comments during sentencing breached the plea agreement. In Canada, the plea agreement bound the government to recommend a sentence of thirty-six months' imprisonment. Id. at 265. At sentencing, however, the prosecutor noted the existence of the plea agreement's sentencing recommendation, but "she never herself affirmatively recommended a 36 month sentence and her comments seemed to undercut such a recommendation." Id. at 268. The prosecutor asserted: "The government feels a substantial period of incarceration in this case, for the reasons that the Court has

21

already indicated . . . . It is important, the government feels, that a very strong message be sent by the Court." Id. at 269 (emphasis omitted).

In concluding that the Canada prosecutor breached the plea agreement, this Court noted that the prosecutor's "references to the agreement were grudging and apologetic" and that "her urging of a 'lengthy period of incarceration' sounded like encouragement for a sentence greater than 36 months." Id. This Court asserted that the government would have met its plea agreement obligations if it had recommended the thirty-six month sentence and "refrained from conspicuously undermining its agreed position," but that the prosecutor breached the agreement "by urging the court to impose a lengthy sentence within a context suggesting that she had in mind something greater than the agreed 36 months." Id. at 270.

This case is also markedly different from Canada. Unlike the Canada prosecutor who not only failed to advocate the 36-month sentence in the plea agreement but argued for a higher sentence, the prosecutor in this case affirmatively argued for a concurrent sentence and against any enhancements that would raise the sentence above the 120-month length. Specifically, in the context of Levy receiving a three-level, rather than a four-level, enhancement for his role in the offense, the prosecutor remarked:

22

> I think based on my long-term involvement with this case that despite the fact that that benefits the Defendant, that is the truth, this scheme did not start with Raphael Levy, he joined it after the ground work had been laid . . . . And the trail of money that was ultimately received by [two codefendants] was in fact greater than that received by Mr. Levy, although what Mr. Levy received was a tremendous amount of money.

In response to these remarks, Levy's counsel stated, "Well, we agree with the Government. I want to thank the prosecutor for fulfilling his role to seek justice, and I want to say that I agree with him."

This Court's decision in United States v. Johnson, 132 F.3d 628 (11th Cir. 1998), is also illustrative in examining whether the prosecutor's conduct at sentencing violated the plea agreement. In Johnson, a plea agreement bound the government to represent that "an amount of marijuana not greater than 100 pounds should be attributed to this defendant." Id. at 630. The PSI, however, recommended that the defendant be held accountable for 1400 pounds of marijuana. When the sentencing court inquired into the difference in amounts, the prosecutor explained that a co-conspirator had not been interviewed until the day after the plea agreement was made and that the co-conspirator's testimony "substantially and drastically" changed the amount of marijuana involved. Id. The prosecutor also made other comments "that further undermined the agreed-

upon provision in the plea agreement," such as vouching for the co-conspirator's credibility. Id. at 630-31.

The Johnson Court determined that the prosecutor violated the plea agreement when he failed to represent that the defendant was responsible for only 100 pounds of marijuana and instead "became an enthusiastic advocate for a 'fact' at odds with the 'fact' to which he had stipulated." Id. at 631. In reaching this conclusion, the Johnson Court emphasized that the prosecutor's "comments – each of which undercut the stipulation on the weight of the marijuana – were not demanded from an AUSA by a zealous judge." Id.

In contrast to the Johnson prosecutor's behavior, the prosecutor in this case remained firm in adhering to the plea agreement, even when the sentencing court solicited input from him on sentencing enhancements. The prosecutor repeatedly declined to offer any evidence on the vulnerable victim enhancement. Unlike in Johnson, the prosecutor in this case did not endorse the PSI. Rather, he stated that "although I might have the ability to present such evidence that would support a vulnerable victim adjustment, I believe as an officer of the Court I cannot do that." Furthermore, when the victims spoke about their losses from the investment scheme, the prosecutor did not vouch for their credibility, and instead asserted that "[t]his is not evidence that the Government is offering." The prosecutor also

24

joined Levy's counsel in strongly advocating a three-level role enhancement, instead of the four-level role enhancement recommended in the PSI.

By refusing to present or endorse any evidence about the victims, by recommending only a three-level role enhancement, and by recommending concurrent sentences, the government clearly did not violate Levy's plea agreement.

## C.     District Court's Conduct

Levy also argues that the district court deprived him of due process when it called victims to testify and questioned the victims about their losses in the investment scheme. Levy further contends that the district court deprived him of due process by allowing the restitution counsel, Kozyak, to address the court and "make comments against Levy." Levy asserts that the district court assumed a prosecutor role in establishing the facts necessary for the vulnerable victim enhancement. We disagree.

First, in his plea agreement, Levy waived his right to appeal the manner in which his sentence was imposed. Thus, Levy is not entitled to appeal based on the district court's method of sentencing.

Second, there was no due process violation in any event. The United States Code provides: "No limitation shall be placed on the information concerning the

25

background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Likewise, the Sentencing Guidelines provide few restrictions on what evidence the sentencing court may consider during sentencing. The Guidelines provide, "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Further, the commentary to § 6A1.3 provides that "[a]ny information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 cmt. The commentary even permits "[o]ut-of-court declarations by an unidentified informant . . . where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means." Id.

This Court's jurisprudence reinforces the Code's and Guidelines' broad approaches to allowing reliable evidence to be considered during sentencing. In United States v. Wilson, this Court instructed, "A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence,

26

provided that the information is sufficiently reliable." 183 F.3d 1291, 1301 (11th Cir. 1999).

Accordingly, we conclude that the sentencing court did not deprive Levy of due process by considering Kozyak's and the victims' statements in determining whether to apply the vulnerable victim enhancement. There is no indication that either Kozyak's or the victims' comments were unreliable. Rather, Kozyak was quite familiar with the details of the investment scheme and the victims were imminently qualified to speak about their experiences relating to the scheme. Nor did the district court's hearing this testimony turn the court into a prosecutor or breach the government's plea agreement. Instead, the district court gave Levy's counsel the chance to cross-examine these witnesses, and there was no due process violation. Therefore, the district court did not err in hearing from Kozyak and the victims or in considering their testimony.

## IV. CONCLUSION

For the above reasons, we affirm Levy's sentences.

AFFIRMED.