[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-11083

_____

D. C. Docket No. 02-14049-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN HOWARD VANORDEN, JR.,
a.k.a. "Robotruc@Bellsouth.net",

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 30, 2005)

ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES

Before TJOFLAT and MARCUS, Circuit Judges, and MUSGRAVE[*], Judge.

PER CURIAM:

On November 4, 2002, John Howard Vanorden, Jr. pled guilty to one count of receiving a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). The base offense level for this offense was seventeen. U.S. Sentencing Guidelines Manual § 2G2.2(a) (2002). The district court added two levels because the material involved depicted children under the age of twelve, id. § 2G2.2(b)(1), five levels because the offense involved "[d]istribution for the receipt, or expectation of receipt, a thing of value, but not for pecuniary gain," id. § 2G2.2(b)(2)(B), four levels because the offense involved masochistic conduct, id. § 2G2.2(b)(3), and two levels because the offense involved a computer, id. § 2G2.2(b)(5). The court subtracted three levels based on Vanorden's acceptance of responsibility. Id. § 3E1.1. These adjustments resulted in a total offense level of twenty-seven, which yielded a guideline sentencing range of 70-87 months imprisonment when coupled with Vanorden's criminal history category of I. On appeal, Vanorden raised only one issue: whether the district court had erred in enhancing his sentence under § 2G2.2(b)(2)(B), supra, because that guideline did not apply to his conduct. He did not raise a constitutional

---

[*] Honorable Kenton R. Musgrave, Judge, United States Court of International Trade , sitting by designation.

2

challenge to his sentence based on the Sixth Amendment right to a trial by jury, Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), or United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).[1] We rejected Vanorden's lone claim and affirmed his sentence in an unpublished opinion. United States v. Vanorden, 99 Fed. Appx. 875 (11th Cir. Apr. 2, 2004).

Vanorden thereafter filed a petition for a writ of certiorari. On January 24, 2005, the Supreme Court granted Vanorden's petition, vacated our decision, and remanded the case "for further consideration in light of [Booker]." Vanorden v. United States, 543 U.S. __, 125 S. Ct. 1040, 160 L. Ed. 2d 1026 (2005). Under our recent decision in United States v. Dockery, 401 F.3d 1261 (11th Cir. 2005), however, "further consideration in light of Booker" does not actually require any consideration of the merits of Vanorden's Booker claim:

> Nothing in the [Booker] opinion requires or suggests that we are
>
> obligated to consider an issue not raised in any of the briefs that
>
> appellant has filed with us. Nor is there anything in the Supreme

---

[1] This omission is certainly understandable in that neither Blakely nor Booker had been decided, and then-controlling circuit precedent held that the Sixth Amendment right to a trial by jury, as explicated in Apprendi, "ha[d] no application to, or effect on, . . . Sentencing Guidelines calculations, when . . . the ultimate sentence imposed does not exceed the prescribed statutory maximum penalty," United States v. Sanchez, 269 F.3d 1250, 1288 (11th Cir. 2001) (en banc).

3

Court's remand order, which is cast in the usual language, requiring that we treat the case as though the [Booker] issue had been timely raised in this Court. In the absence of any requirement to the contrary in either [Booker] or in the order remanding this case to us, we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned.

Id. at 1262-63 (quoting United States v. Ardley, 242 F.3d 989, 990, reh'g en banc denied, 273 F.3d 991 (11th Cir. 2001)). Because Vanorden did not challenge his sentence on Sixth Amendment-Apprendi-Blakely-Booker grounds in his first trip through this circuit, this argument is "deemed abandoned." Accordingly, we reinstate our previous opinion and AFFIRM Vanorden's sentence.

TJOFLAT, Circuit Judge, specially concurring:

I concur in the judgment of the panel because we are bound by Dockery. See, e.g., United States v. Machado, 804 F.2d 1537, 1543 (11th Cir. 1986) ("Only a decision by this court sitting en banc or by the United States Supreme Court can overrule a prior panel decision."). If we were writing on a clean slate, I would consider the merits of Vanorden's Booker claim. As the panel notes, Dockery concludes that nothing in either Booker itself or in the standard Supreme Court order remanding a case "for further consideration in light of [Booker]" "requires or suggests that we are obligated to consider" a Booker claim that was not raised in the defendant's initial brief on appeal. Under Dockery, such a claim is "deemed abandoned" even if the defendant's initial brief was filed before Blakely and Booker were decided, at which time this and every other circuit had squarely rejected identical arguments. Dockery, 401 F.3d at 1262-63 (quoting Ardley, 242 F.3d at 990).

This is a strange rule we have: in a case in which the Supreme Court has vacated our decision for "for further consideration in light of [Booker]" precisely because we did not have the benefit of Booker when we rendered our first decision, we decline to actually consider the Booker issue on the ground that it was not raised when we issued that first decision. As I have explained elsewhere, it is also

5

a very bad rule, as it is not only inconsistent with Supreme Court precedent and the law of every other circuit, but also encourages defendant-appellants to raise frivolous claims that are squarely foreclosed by circuit and Supreme Court precedent on the off chance that an unanticipated decision will make them suddenly viable. See United States v. Levy, 391 F.3d 1327, 1335-51 (11th Cir. 2004) (Tjoflat, J., dissenting from the denial of rehearing en banc); Ardley, 273 F.3d at 995-1007 (Tjoflat, J., dissenting from the denial of rehearing en banc). Nonetheless, it is a strange, bad rule that is the law of the circuit, so I concur rather than dissent. I write separately to explain briefly (1) why it is particularly troubling that this court continues to refuse to address Booker claims in "GVR" cases (i.e., cases in which the Supreme Court has granted the defendant's petition for certiorari, vacated the prior judgment of this court, and remanded for further consideration in light of Booker) and (2) the practical consequences of our rule.

To begin with, I cannot agree with Dockery's determination that "[n]othing in the [Booker] opinion requires or suggests that we are obligated to consider an issue not raised in any of the briefs that appellant has filed with us." Dockery, 401 F.3d 1262 (quoting Ardley, 242 F.3d at 990). In Booker, the Supreme Court clearly instructed that "we must apply [Booker's] holdings—both the Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act—to all

cases on direct review." Booker, 543 U.S. at __, 125 S. Ct. at 769 (emphasis

added). In other words, Dockery finds nothing in the Supreme Court's specific

directive that we must apply Booker to all cases on direct review that even suggests

that we should address Booker claims in this subset of cases on direct review (i.e.,

cases in which the defendant's initial brief did not contain a Booker-type claim for

the imminently sensible reason that such a claim had been rejected by each and

every circuit). Other circuits have, to say the least, read Booker's instruction

differently. E.g., United States v. Ameline, __ F.3d __, 2005 WL 1291977, at *11

(9th Cir. June 1, 2005) (en banc) ("Booker explicitly stated that its holding applies

to all cases pending on direct appeal. Booker, 125 S. Ct. at 769. Even where the

briefs filed by the parties do not raise a Booker objection, we conclude that the

issue may be raised and should be considered."); United States v. Washington, 398

F.3d 306, 312 n.7 (4th Cir. 2005) ("Although appellate contentions not raised in an

opening brief are normally deemed to have been waived, the Booker principles

apply in this proceeding because the Court specifically mandated that we 'must

apply [Booker] . . . to all cases on direct review.'" (citation omitted) (quoting

Booker, 543 U.S. at __, 125 S. Ct. at 769)).

To be sure, the Booker Court did go on to say that it "expect[ed] reviewing

courts to apply ordinary prudential doctrines, determining, for example, whether

7

the issue was raised below and whether it fails the 'plain-error' test."  543 U.S. at

__, 125 S. Ct. at 769.  And the Supreme Court has also said that the general

principle that a decision concerning the conduct of criminal prosecutions must be

applied to all cases still pending on direct review is "subject, of course, to

established principles of waiver, harmless error, and the like."  Shea v. Louisiana,

470 U.S. 51, 58 n.4, 105 S. Ct. 1065, 1069 n.4, 84 L. Ed. 2d 38 (1985).[1]  These

qualifications of the general principle do not, however, implicate this case.  First,

the rule followed in Dockery is not an "ordinary prudential doctrine"; in fact, it is a

quite extraordinary rule in that we invented it only four years ago and it has not

been followed by any other circuit.  See Levy, 391 F.3d at 1343-48 (Tjoflat, J.,

dissenting from the denial of rehearing en banc).  Second, the fact that Vanorden's

claim is "subject . . . to established principles of waiver" is inapposite because

Vanorden has done nothing that can plausibly be construed as a "waiver."  As the

Supreme Court has explained, "[w]aiver is different from forfeiture.  Whereas

forfeiture is the failure to make the timely assertion of a right, waiver is the

'intentional relinquishment or abandonment of a known right.'"  United States v.

Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993)

---

[1] Shea was decided two years before Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), which was the first Supreme Court case to hold that, without exception, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final."  Id. at 328, 107 U.S. at 716.

8

(quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). Thus, while Vanorden did forfeit his Booker claim by failing to "timely assert[]" it—which means that review in his case should be for plain error only—it is clear that he has not "waived" it. At the time the supposed waiver took place—when Vanorden's lawyer filed his initial brief in April 2003—Blakely and Booker had not yet been decided,[2] and this circuit and every other had squarely rejected Blakely/Booker-type arguments. It, therefore, it makes no sense to say that Vanorden "intentional[ly] relinquish[ed]" a "known" Sixth Amendment right.[3]

---

[2] Vanorden's opening brief was filed on April 17, 2003, about three weeks before a petition for certiorari was filed in Blakely, see Petition for a Writ of Certiorari, Blakely (No. 02-1632), and about six months before the Court granted the petition, Blakely v. Washington, 540 U.S. 965, 124 S. Ct. 429, 157 L. Ed. 2d 309 (2003).

[3] Several other circuits have expressly agreed that such an omission is not a "waiver." E.g., United States v. Vazquez-Rivera, 407 F.3d 476, 487-88 (1st Cir. 2005); United States v. Macedo, 406 F.3d 778, 789 (7th Cir. 2005); United States v. McDaniel, 398 F.3d 540, 546-47(6th Cir. 2005).

In my dissent in Levy, I tried to explain the difference between "waiver" and "forfeiture" and its significance in this context: a new constitutional rule concerning criminal prosecutions applies to all cases then pending on direct review unless the defendant has waived (and not just forfeited) the claim, see supra note 1 and accompanying text; and, moreover, Federal Rule of Criminal Procedure 52(b) extends plain-error review to all issues unless they have been waived (and not just forfeited) by the defendant, see Olano, 507 U.S. at 732-34, 113 S. Ct. at 1777. The waiver/forfeiture distinction is thus crucial. See generally Levy, 391 F.3d at 1339 n.7, 1341-43 (Tjoflat, J., dissenting from the denial of rehearing en banc). My discussion of this point drew the following response from the concurrence:

> The dissent . . . attempts to make a distinction between waiver, forfeiture, and abandonment. However, the dissent misunderstands the issue. The issue is not whether Levy's failure to raise his Blakely-type issue necessarily constitutes waiver, forfeiture, or abandonment. Rather, the issue is whether this Court will apply its well-established procedural rules; that is, this Court will not consider claims raised in a petition for rehearing that were never raised, in any form, in a defendant's initial brief on direct appeal.
>
> The dissent attempts to confuse the issue by discussing the difference

In sum, because the rule that bars Vanorden's <u>Booker</u> claim is not an "ordinary prudential doctrine," and because Vanorden has done nothing to "waive" his claim, <u>Booker</u> does, in fact, obligate us to consider it. <u>Dockery</u>'s conclusion to the contrary is erroneous and should be corrected by this court sitting en banc or by the Supreme Court.

I also cannot agree with the conclusion reached in <u>Dockery</u> that nothing in the Supreme Court's standard GVR order requires us to consider claims such as Vanorden's. The precise significance of these orders has always been something of a mystery,[4] but the Supreme Court's discussion of its GVR power in <u>Stutson v.</u>

---

between waiver, forfeiture, and abandonment. The issue is not whether this Court has the power to consider issues not raised in the initial brief; of course it does. Rather, this Court, out of concerns for judicial economy and finality, has elected to adopt and apply procedural rules universally and equally. This is not only fair and consistent, but a logical extension of the Supreme Court's decision in <u>Shea</u>.

<u>Id.</u> at 1334-35 (Hull, J., concurring in the denial of rehearing en banc).

My discussion was not intended to "confuse" anyone. I understand, of course, that the issues-not-briefed-are-waived rule does not turn on the waiver/forfeiture distinction; rather, its application turns simply on whether the issue was in the brief. The point I was endeavoring to make is that because <u>Griffith</u>, <u>Shea</u>, and <u>Olano</u> do turn on this distinction, we cannot go merrily along "adopt[ing] and apply[ing] procedural rules" in a way that conflicts with those decisions. In the end, the essence of the concurrence's position was that our rule (a) does not require a knowing and intelligent waiver and (b) is "but a logical extension of the Supreme Court's decision in <u>Shea</u>." To its credit, the concurrence did concede that its position was an "extension" of Supreme Court precedent. But the problem remains that this extension is neither "logical" nor justifiable because "[w]aiver is different from forfeiture," <u>Olano</u>, 507 U.S. at 733, 113 S. Ct. at 1777; contrary to the concurrence's position, the terms are not freely interchangeable.

[4] <u>See generally</u> Arthur D. Hellman, <u>The Supreme Court's Second Thoughts: Remands for Reconsideration and Denials of Review in Cases Held for Plenary Decisions</u>, 11 Hastings Const. L.Q. 5 (1983); <u>see also</u> <u>Henry v. City of Rock Hill</u>, 376 U.S. 776, 776-77, 84 S. Ct. 1042, 1043, 12 L. Ed. 2d 79 (1964) (stating that a GVR is appropriate when the Court is "not certain that the case was free from all obstacles to reversal on an intervening precedent" but the intervening

10

United States, 516 U.S. 193, 116 S. Ct. 600, 133 L. Ed. 2d 571 (1996), nonetheless implies that we should not disregard claims like the one presented here. In Stutson, after the defendant was convicted of cocaine possession and sentenced to 292 months in prison, his attorney filed his notice of appeal in the district court, rather than in the court of appeals (as required by Federal Rule of Appellate Procedure 4(b)), and one day late. The district court held that this mistake barred any appeal because it did not constitute "excusable neglect" under Rule 4(b). Shortly before the district court's decision, the Supreme Court had held that comparable attorney negligence could establish "excusable neglect" under the bankruptcy rules; however, that opinion was not cited in the briefs to the district court or in the district court's decision. On appeal in this court, the parties disputed the applicability of the bankruptcy decision in the criminal context. We affirmed without oral argument or written opinion. By the time the case reached the Supreme Court, however, all six circuits to address the issue had held that the "excusable neglect" standard articulated in the bankruptcy case also applied in the criminal context, and the Government had even changed its position to agree with those circuits. See id. at 194-95, 116 S. Ct. at 601-02. The Court concluded that

decision is "sufficiently analogous and, perhaps, decisive to compel re-examination of the case"); Robert L. Stern et al., Supreme Court Practice 319 (8th ed. 2002) (stating that when the Supreme Court issues a GVR, "the lower court is being told simply to reconsider the entire case in light of the intervening precedent—which may or may not compel a different result").

"this exceptional combination of circumstances present[ed] ample justification for a GVR order"—even though the GVR was "for further consideration in light of" an opinion that was addressed in the briefs filed below, and even though the Government had not confessed error, but merely disavowed its previous litigating position. Id. at 195-96, 116 S. Ct. at 602.

Stutson's holding concerning the scope of the Supreme Court's GVR power is, of course, not relevant here. But some of its discussion of the purpose of those orders is instructive. The Court first emphasized,

> [I]t is not insignificant that this is a criminal case. When a litigant is subject to the continuing coercive power of the Government in the form of imprisonment, our legal traditions reflect a certain solicitude for his rights, to which the important public interests in judicial efficiency and finality must occasionally be accommodated. We have previously refused to allow technicalities that caused no prejudice to the prosecution to preclude a remand . . . "in the interests of justice." And procedural accommodations to prisoners are a familiar aspect of our jurisprudence. . . .
> Judicial efficiency and finality are important values, and our GVR power should not be exercised for "[m]ere convenience." "But dry formalism should not sterilize procedural resources which Congress has made available to the federal courts."

Id. at 196-97, 116 S. Ct. at 603 (citations omitted) (quoting Wood v. Georgia, 450 U.S. 261, 265, n.5, 101 S. Ct. 1097, 1100, n.5, 67 L. Ed. 2d 220 (1981), and Adams v. United States ex rel. McCann, 317 U.S. 269, 274, 63 S. Ct. 236, 239, 87 L. Ed. 268 (1942)). These concerns apply with equal force here. In view of the

12

fact that Vanorden is "subject to the continuing coercive power of the Government in the form of imprisonment," it is not too much to ask that we make the minor "procedural accommodations" necessary to determine whether any portion of his sentence of imprisonment violates the Constitution.  The Supreme Court has consistently identified the end of a defendant's direct appeal as the point at which systemic interests in finality surpass the defendant's interest in benefitting from a new rule of constitutional law.[5]  By refusing to consider claims such as Vanorden's, we have said essentially that the Supreme Court struck the wrong balance and that the defendant's opening brief on appeal should be the tipping point.  Because our reevaluation is based on nothing more than "convenience" and "dry formalism," it is inconsistent with the important and "familiar aspect[s]" of "our legal traditions" Stutson emphasizes.

The Stutson Court also explained some of the reasons for the GVR order it issued: "a GVR order guarantees to the petitioner full and fair consideration of his rights in light of all pertinent considerations" and also "promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially

---

[5] E.g., Teague v. Lane, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."); Griffith, 479 U.S. at 328, 107 S. Ct. at 716 ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final").

13

relevant decisions and arguments that were not previously before it." Stutson, 516 U.S. at 197, 116 S. Ct. at 603. Three aspects of this description of the GVR order are instructive here: First, to "guarantee[] . . . full and fair consideration" of all of a person's "rights" implies more than to permit review of those issues that were previously raised in the court of appeals. Second, a GVR order does not "promote[] fairness" if the court of appeals refuses to give the case "further consideration in light of" the very decision that triggered the GVR, as the defendant is then no better off than he was before the GVR. Third, if one purpose of a GVR order is for the court of appeals "to consider . . . arguments that were not previously before it," then we thwart that purpose by failing to consider Booker issues in cases like this one. Thus, although Stutson is not clearly controlling, its rationale does suggest that GVR orders are more significant than this court has been willing to admit.

Lastly, it must be clear that our Ardley-Levy[6]-Dockery line of cases is especially pernicious because it constitutes an absolute, across-the-board bar to claims such as the one we refuse to consider here. These claims are now barred on both direct appeal and collateral review, and they also cannot form the basis of an

---

[6] The Supreme Court has vacated the judgment in United States v. Levy, 374 F.3d 1023 (11th Cir. 2004), and remanded for further consideration in light of Booker. United States v. Levy, 543 U.S. __, __ S. Ct. __, 2005 WL 540692 (June 6, 2005) (No. 04-8942).

14

ineffective assistance of counsel claim, see Levy, 391 F.3d at 1334 n.3 (Hull, J., concurring in the denial of rehearing en banc); Ardley, 273 F.3d at 993-94 (Carnes, J., concurring in the denial of rehearing en banc).[7] The upshot of our rule, therefore, is that a Supreme Court decision that we are directed to apply retroactively to all cases still pending on direct review, e.g., Booker, 543 U.S. at __, 125 S. Ct. at 769; Griffith, 479 U.S. at 328, 107 S. Ct. at 716, will not apply at all to cases on direct review like this one.[8]

---

[7] If on direct review, an appellate court improperly refuses to apply Booker retroactively, "then a court conducting collateral review of such a conviction should rectify the error and apply [Booker] retroactively." Shea, 470 U.S. at 58 n.4, 105 S. Ct. at 1069 n.4. Thus, on collateral review, a defendant such as Vanorden will have a substantial argument that Booker should apply retroactively. I have no doubt that most such defendants will make this argument, that the district courts in this circuit will have to adjudicate their claims, and that we will at least have to deal with them in the form of applications for certificates of appealability. The same is true with respect to ineffective assistance claims based on counsel's failure to raise a Booker-type claim in the defendant's opening brief. Although these claims are unlikely to succeed, they will surely be litigated, particularly given that we have characterized counsel's omission as a "waiver" of the possibility of a substantially lower sentence. Thus, I am not saying that these claims will not be raised on collateral review; rather, I am simply observing here that it is all but certain that they will fail because (1) the district court and this court on appeal will be bound to conclude that the refusal to apply Booker on direct appeal was entirely proper, and (2) six of the twelve judges on this court joined an opinion concurring in the denial of rehearing en banc in either Ardley or Levy that stated that this sort of "waiver" will not constitute ineffective assistance of counsel.

[8] In contrast, in Stutson, supra, it was at least clear that the defendant was left with an ineffective assistance claim even if the Supreme Court did not GVR his direct appeal. See generally Roe v. Flores-Ortega, 528 U.S. 470, 480, 484, 120 S. Ct. 1029, 1036, 1038, 145 L. Ed. 2d 985 (2000) (holding that counsel's failure to file a timely notice of appeal without first consulting the defendant constitutes ineffective assistance if (1) "there is reason to think . . . that a rational defendant would want to appeal" or the defendant himself "reasonably demonstrated to counsel that he was interested in appealing" and (2) there is a reasonable probability that the defendant would have appealed but for counsel's failure to consult him). Nonetheless, the Supreme Court emphasized that "convenience" and "formalism" should not stand in the way of considering his claim on direct appeal.

I continue to disagree with the rule we apply in this case for all the reasons given in my dissents in <u>Levy</u> and <u>Ardley</u>. As explained here, this rule is particularly problematic when applied to cases on remand from the Supreme Court. Hopefully, this court sitting en banc, or the Supreme Court, will soon correct this practice. However, because a panel of this court is not free to do so, I concur in the judgment.